PEARL ROGERS, Appellee, v. W. D. JEFFERSON, Appellant.

No. 43740.

APRIL 6, 1937.

OPINION MODIFIED AND REHEARING DENIED FEBRUARY 11, 1938.

Hal H. Mosier, Hal W. Byers, and McMartin, Herrick & Langdon, for appellant.

McCoy & Beecher, for appellee.

SAGER, J.—Appellee concedes the substantial accuracy of appellant's statement of facts, so we adopt it with some modifications which seem conducive to brevity.

This accident happened about 6 o'clock on the evening of August 25, 1934, about three miles west of Dunkerton, at an intersection of north-and-south and east-and-west graveled county trunk roads. The appellee, Pearl Rogers, and her husband and son were on their way home from Waterloo. The son, George, eighteen years of age, was driving, with his father sitting beside him. The mother (plaintiff-appellee herein) was in the back seat. They were traveling north. Defendant-appellant was accompanied by his wife and one son in the front seat and another son in the back seat, and was driving easterly toward the intersection where the accident occurred. The intersecting highways were about the same width. The day was clear and the roads were dry. At the southwest corner of the intersection was a pasture in which there was nothing to prevent the drivers of the cars involved from seeing each other as they approached the intersection.

The driver of appellee's car testified that as he drove north to the intersection he saw the appellant's car coming from the west at about the same distance as he was from the crossing, to wit, about thirty rods. Both cars were traveling, according to his estimate, at approximately the same rate of speed, thirty to thirty-five miles per hour. After seeing appellant's car at the distance stated, he proceeded north, and did not again see the car until the instant of collision. The husband of appellee

testified that he did not look to the west (the direction from which appellant was coming) at any time; and appellee looked only to the right to see that there was no car coming from that quarter, and did not see appellant's car until the moment of collision.

The witness Wehling, working in a field nearby, saw both cars approaching, appellant's at about thirty miles per hour, and testified that he thought there was going to be an accident because ''they were both going about the same speed and neither one seemed to slow up.''

Appellant saw the car in which appellee was riding when the latter was at a distance of about fifteen hundred feet from the intersection, and thereafter did not see it again until ''just a fraction of a second before the collision.'' According to the testimony of the appellant the cars met in such a way that his right front corner and the left front corner of the other car collided.

The testimony of appellee's son differed somewhat from that of appellant in this regard. He said:

'' * * * their car struck ours behind the front wheel—the rear part of the front wheel and the whole side was caved in. Neither headlight was broken. I don't believe the radiator was broken. The rear part of the left front fender was bent badly.''

Appellee adds somewhat to the statement of facts herein-before set out. Among other things, she says that the southwest and northwest corners of the intersection at which the collision occurred are square corners, and not rounded; and then, per-haps as a conclusion but by way of explanation, adds that there were two points of danger for traffic approaching said inter-section from the south, viz: the point south of said intersection at which the traffic coming from the east and turning south came upon the north-and-south road, and the point at which the paths followed by the north-and-south traffic and the east-and-west traffic intersected.

Appellant urges but one error in this appeal. That is (in his own language) '' * * * that the Court erred in overruling the defendant's motion for directed verdict, for the reason that the plaintiff failed as a matter of law to sustain her burden of proving freedom from contributory negligence.''

It is to be kept in mind that both cars were moving

toward the intersection at about the same rate of speed. Each driver saw the other when the cars were at a considerable distance from the intersection. There is no dispute in the record but that the highways in question were arterial highways. There is no evidence in the record that the county board of supervisors had determined, by the erection of signs, which line of traffic should have the right of way as provided in Code section 5079-d2, except perhaps in so far as the "SLOW" sign to the west of the intersection and the "STOP" sign to the north may indicate some action on the part of the board. There is no testimony in the record casting any light on the question as to who actually put these signs in their then location, but it may be fairly assumed that no one but the officers of the law in charge of the enforcement of highway regulations had anything to do with it. In any event, we think that appellee's son was warranted in assuming that the "SLOW" sign against which appellant was proceeding was placed there by proper authority, and that he was entitled to take it into consideration in determining his movement toward the intersection.

We conclude that on the whole record the trial court was not only warranted, but was compelled to submit the case to the jury. This being true, the case is affirmed.

Since the opinion herein was filed we have had occasion to consider another cause growing out of the same state of facts (Rogers v. Jefferson, 224 Iowa ——, 275 N. W. 874). In this later case plaintiff's son was driving the car in which plaintiff in the instant case was riding as a guest at the time she was injured. The view we expressed in the later case, Hamilton, C. J., speaking for the court, leaves nothing more to be said on the subject.

RICHARDS, C. J., and all Justices concur.