**HOOVER, Plaintiff, v. BLACKMORE, Defendant.**

Municipal Court, (Civil Division), Dayton Ohio.

No. 87235. Decided April 12, 1949.

Southard & Rothberg, Dayton, for plaintiff.
Canny & Holzfaster, Dayton, for defendant.

**OPINION**

By McBRIDE, J:

This action is a civil suit involving a motor vehicle accident which took place March 22, 1947 at the intersection of the Taylorsburg-Englewood Road with the Wenger Road in Montgomery County, Ohio. The plaintiff, Nevin G. Hoover, was operating his vehicle in a northerly direction at a time when the defendant, Otha Blackmore, was approaching the same intersection in a westerly direction on the Wenger Road. Visibility was good that day, however, the view of the drivers of each other was obstructed. The plaintiff alleged in his petition that there was a stop sign located on the corner, controlling traffic approaching on Wenger Road and that the defendant failed to stop before entering the intersection. The evidence clearly establishes that this stop sign had been erected on a post which was subsequently knocked over to an angle which made it impossible for the sign to be seen by anyone approaching the intersection.

Both vehicles entered the intersection at substantially the same instant, the plaintiff travelling at about 35 miles per hour and the defendant, on the right, at about 25 miles per hour. Since neither appear to have been guilty of any lack or ordinary care, the only question is whether or not the defendant had the right of way at this intersection. This must be determined by the motor vehicle statute enacted by the General Code of Ohio.

**Sec. 6307-40 GC** provides:

"Excepting where otherwise provided the operator of a vehicle * * * shall yield the right-of-way at an intersection to a vehicle * * * approaching from the right."

Under this section, the defendant, whose vehicle approached from the right, had the right-of-way, unless he was required to stop before entering the intersection as a result of a stop sign erected by the county engineer.

**Sec. 6307-7** (formerly §6310-32 GC) provides:

"(a) The provisions of this act shall not be deemed to prevent **local authorities** with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from—

1. Regulating the stopping \* \* \* of vehicles \* \* \*;
\* \* \* \* \* \* \* \* \*

6. Designating any highway as a through highway and requiring that all vehicles \* \* \* stop before entering or crossing the same or designating any intersection as a stop intersection and requiring all vehicles \* \* \* to stop at one or more entrances to such intersection;
\* \* \* \* \* \* \* \* \*

(b) No ordinances or regulations enacted under subdivisions 4, 5, 6, 7 and 9 of this section shall be effective until signs giving notice of such local traffic regulations are posted upon or at the entrances to the highway or part thereof affected as may be most appropriate."

Under this section, three conditions exist before local traffic signs are legally effective:

(1) The ordinance or regulation of the "local authorities" must ·be regularly adopted by the legislative body of the community. **Albrecht Grocery Company v. Overfield, 32 Oh Ap 512 (1929).**

(2) The regulation must be within the reasonable exercise of the police power of such legislative body (§6307-2 GC), and

(3) Appropriate signs giving notice of such regulations must be posted at the entrances to the part of parts of the highway· affected. **Bartlett v. McDonald, 59 Oh Ap 85.**

In the Albrecht case, the council of the city of Akron had not, at the time of the accident, established Cedar Street as a main thoroughfare; at least, no claim was so made, and no ordinance was offered by the plaintiff in error to establish that fact. (P 517) In that case, the Court said:

"The lawmaking power is vested in legislative bodies and in a few appointive boards, but not yet in the police departments of her many cities. \* \* \* The council of the city of Akron not having passed the ordinance so authorized to be passed, it is quite immaterial whether the police department erected the signs claimed by the plaintiff in error to have been erected, \* \* \*. Signs so erected do not have any legal affect whatever, and **no one is required to pay any attention to them.**" **Albrecht v. Overfield, 32 Oh Ap (518) 512. (1929). (The sweep-**

ing effect of this statement·was modified in 1935 in Cook v. Hunter, which is discussed later in this decision.)

A somewhat similar decision was rendered by Judge Crawford on January 17, 1948, in Case No. 95317 in the Common Pleas Court of Montgomery County, Ohio, involving the intersection at Broadway and Oxford Avenue in Dayton, Ohio.

The issue in the instant case is therefore reduced to the question as to whether or not the Commissioners of Montgomery County, Ohio, adopted any resolution regarding the intersection in question.

A deputy from the County Engineers Office testified that he was in charge of a book, kept by him of all traffic signs erected in Montgomery County by the Engineer's Office. He testified that two stop signs were erected on Wenger Road at this intersection on the 24th of September, 1937; that these two signs and several hundred additional signs were erected for the safety and convenience of the public, without any resolution from the county commissioners. He stated that over approximately the past 15 years, five or six signs were authorized by the county authorities, but that the two in question were not included in such resolutions. No ordinance or resolution involving this particular intersection was offered at the trial.

The testimony reveals that about five years ago, the county engineer, apparently at the request of the commissioners, made a survey of all existing signs and needed traffic controls in the county. Since that time, a record has been maintained by the engineer of all signs that have been erected, however, few such controls have ever been approved by the commission.

Sec. 6307-2 GC defines "local authority" as every county, municipal and other local board or body having authority to adopt local police regulations under the constitution and laws of this state. The Attorney General has given an opinion that the term "local authorities" includes boards of county commissioners. The county engineer has no power to establish police regulations. The right to do so on behalf of a county resides only with the county commissioners.

We find from the evidence that no ordinance or regulation controlling this intersection was ever adopted and that the stop sign at the intersection involved in this case was of no legal significance. The defendant did not violate any lawful police regulation when he failed to stop.

### Effect of Unauthorized Stop Sign

Since the particular stop sign at the intersection was defaced

and so bent to the ground that it was not visible, it is unnecessary to decide the effect of a visible, appropriate sign in this case, however, in the interest of public safety it is necessary to observe that the strong words used in the Albrecht case were modified in 1935 by the same Court of Appeals. Such "courtesy" signs cannot be flagrantly disregarded. In **Cook v. Hunter, 52 Oh Ap 354, 6 O. O. 382 (1935)**, the Court of Appeals of Summit County said:

"We are now constrained to assert that this quoted language—
(Signs so erected do not have any legal effect whatever, and no one is required to pay any attention to them.)
—was unfortunate. It has always been permissible to show all the conditions, facts and circumstances surrounding the location of a collision of this character, in determining whether the respective parties, in view of these conditions, facts and circumstances, acted as ordinarily prudent persons would act under like conditions, facts and circumstances, and were therefore guilty of negligence or contributory negligence, directly and proximately producing the collision and injury, although a criminal conviction could not be based upon a failure to observe a stop sign or traffic light not erected and maintained by authority of law. The warning effect of the traffic signal erected at the intersection of the roads where the collision occurred which gives rise to the instant action, was in no way lessened or increased by the obtaining or failing to obtain the consent and approval of the highway director to erect and maintain the same. We expressly **disapprove** that portion of the language used by this court on page 518 in the opinion in the case of Fred W. Albrecht Grocery Co. v. Overfield, supra, to-wit: "And no one is required to pay any attention to them.""

Where the presumption that an appropriate, discernible stop sign was authorized has been rebutted by the evidence, such sign is nevertheless a definite warning of danger, especially when it is located at an intersection or at a place where a dangerous condition exists. Consequently, in a civil action, the presence of an unauthorized sign is material on the question of negligence or contributory negligence but it is not material on the question of a violation of law or negligence "per se". In other words, one who disregards such a sign cannot be prosecuted criminally, nor can he be said to be negligent because he violated a law, however, in a civil case, he may be found to have failed to exercise ordinary care in failing to heed the warning of the condition or danger indi-

cated by the sign. This is particularly true at intersections where the presence of a stop sign implies that others may approach from a different direction without being similarly warned of the danger.

Unauthorized "courtesy" traffic controls, if clearly visible, require operators of vehicles to take such factor into consideration in exercising ordinary care under the circumstances. Mere failure to stop is not, and cannot be, negligence "per se", however, if the sign is visible from an approaching vehicle, that fact may be considered by the judge or jury just as in any other case involving the exercise of ordinary care. How far the law may go under such circumstances—without actually enforcing an unlawful traffic signal—is a question which can only be resolved by the facts and circumstances in each case.

It is argued that the court should interpret the State statute as extending the police power of the county to include the discretionary acts of the county engineer because his acts "best serve the interest of the public." Extending this argument, we would be required to recognize the act of any county officer or employee who individually acted in the interest of the public. It can readily be appreciated that such a position would destroy organized government. In the county, the commission is the only body having authority to adopt police regulations.

\* \* \* \* \*

Since the sign involved in this case was not visible and could not have advised the defendant of any danger, we cannot consider its presence in determining the question of the exercise of ordinary care by the defendant.

Consequently, we must find that the defendant was not required to stop before entering the intersection and further that since the defendant was approaching the intersection on the right, he was entitled to the right-of-way, that is, to proceed uninterruptedly in a lawful manner into the intersection.

The presence of a **lawful** stop sign would have completely reversed the right-of-way at this intersection and accordingly would have required a decision in favor of, rather than against this plaintiff, however, in view of the fact that no regulation authorizing the sign was ever adopted, we are compelled to find that not only was the defendant not required to stop but that in addition, he had the right, under §6307-40 CG, to enter uninterruptedly in preference to the plaintiff.

The petition of the plaintiff for $375.00 damages is accordingly dismissed at his costs.