**YELLOW CAB & BAGGAGE CO., Inc.**

v.

**MASON.**

No. 6369.

Court of Civil Appeals of Texas.

Amarillo.

Feb. 1, 1954.

Rehearing Denied Feb. 22, 1954.

Culton, Morgan, Britain & White, Amarillo, for appellant.

Merchant & Fitzjarrald, Amarillo, for appellee.

NORTHCUTT, Justice.

This is an action brought by B. N. Mason, hereinafter referred to as plaintiff, against Yellow Cab & Baggage Company, Inc., hereinafter referred to as defendant, for damages sustained by reason of plaintiff's wife being injured in an automobile collision. Plaintiff alleged that on or about August 22, 1952, plaintiff's wife was riding in an automobile being driven by Jet Mason, son of the plaintiff, who was driving in a northerly direction on South Polk Street, Amarillo, Texas. He pleaded that when said automobile reached the intersection of 34th Street with Polk Street and was in the act of passing through the intersection a taxicab, then being driven by an agent, servant, and employee of the defendant in a westerly direction on 34th Street, collided with the car that plaintiff's wife was riding in and by virtue of such collision plaintiff's wife was greatly injured. Cecil Okerson was the driver of the taxicab in question.

Plaintiff pleaded the defendant's driver was negligent in the following particulars:

"(a) Defendant's driver was negligent, as he approached the place where occurred the collision, in failing to stop at the stop sign located on 34th Street, to stop traffic entering into Polk Street from the East.

"(b) Defendant's driver was negligent, as he approached the place where occurred the collision, in failing to keep a lookout for persons and vehicles approaching on and along Polk Street, and especially the vehicle occupied by plaintiff's wife.

"(c) Defendant's driver was negligent, as he approached the place where occurred the collision, in failing to bring the vehicle that he was then driving to a complete stop, before driving same into the intersection of 34th Street with Polk Street.

"(d) Defendant's driver, as he approached the place where occurred the collision, was negligent in failing to have the said vehicle that he was then and there driving under that degree of control that a person of ordinary prudence would have maintained over same, under the same or similar circumstances.

"(e) Defendant's driver, as he approached the place where occurred the collision, was negligent in operating said motor vehicle at an excessive rate of speed, under all the facts and circumstances existing at the time and place in question.

"(f) Defendant's driver was negligent, as he approached the place where occurred the collision, in failing to apply his brakes at the intersection of Polk Street with 34th Street."

Defendant answered denying its driver was guilty of the acts of negligence complained of in the plaintiff's petition and further pleaded that if plaintiff's wife was injured as set forth in the plaintiff's petition, such injuries were the result of an unavoidable accident. Defendant also pleaded that its driver was proceeding in a westerly direction on 34th Street approaching the intersection of 34th Street with South Polk Street; that 34th Street is paved and is straight and wide but that South Polk Street at and before the point

of its intersection with 34th Street makes a sharp and definite bend or turn to the east so that Polk Street at such location does not present an appearance of constituting a through street for traffic driving north or south thereon; that at and before and for some time subsequent to the time of the collision there was located at the northeast corner of the intersection of 34th Street with South Polk Street a yellow stop sign but such stop sign was, in some manner unknown to the defendant, turned upon the standard upon which the sign was fastened so that such sign faced directly to the south and in the face of traffic proceeding north on Polk Street at the time and in the direction the car being ridden in by the plaintiff's wife approached the intersection; that because the sign was turned in the fashion described at the time and place of the collision it presented to persons driving in the direction the taxicab being driven by defendant's driver was driving a thin edge of metal but was clearly discernible as a traffic sign prohibiting traffic driving north on Polk Street from entering into the intersection without coming to a stop; that the driver of the taxicab, observing this stop sign was facing to the south, reasonably assumed that such sign constituted 34th Avenue a through street prohibiting traffic proceeding north on Polk Street to enter into the intersection unless such intersection was clear of traffic, therefore the driver of the taxicab did not naturally reduce the speed of the taxicab upon entering the intersection of 34th and Polk Streets; that Okerson, driver of the taxicab, was approaching said intersection from a position to the right of the automobile being ridden in by the plaintiff's wife and therefore under the laws of the road as well as under the position of the stop sign referred to Okerson had and reasonably assumed that he had the right of way through the intersection of 34th and Polk Streets; that the collision did not result from any act of negligence of Okerson but that, unless such collision resulted from the negligence of the driver of the car in which plaintiff's

wife was riding, such accident was the result of some prank or some unforeseen circumstance which turned the stop sign referred to fully away from 34th Street and onto Polk Street prior to the time and place where the accident occurred. Defendant pleaded other matters not necessary to mention here.

The case was submitted to the jury upon fourteen special issues. The defendant presented its objections to the court's charge, which were overruled by the court. The issues were answered by the jury favorable to the plaintiff and found the amount of damages to be $25,833. The trial court held the damages allowed by the jury to be excessive and required a remittitur in the amount of $10,833. The plaintiff remitted the $10,833 and judgment was granted for the plaintiff for $15,000. Defendant presented its motion for a new trial which was overruled by the court, to which action of the court the defendant excepted and gave notice of appeal and has perfected this appeal.

 Appellant presents its appeal upon two assignments of error. The first assignment is as follows:

"The Court erred in submitting to the jury as negligence the failure of the driver of the cab to stop, since such action of the Court resulted in a submission upon an erroneous theory of law and resulted in prejudice to the appellant, there being insufficient evidence to sustain the answers of the jury to Special Issues 2, 3, 4, and 5 in the absence of a duty on the driver of the cab to stop."

The first five special issues submitted to the jury concern the acts of appellant's driver. Subdivision (a) of Special Issue No. 1 is as follows: "Do you find and believe from the preponderance of the evidence that Cecil Okerson, the driver of the taxicab, failed to stop before entering the street intersection?" This is not a disputed question. The defendant did not claim that its driver stopped at the stop

sign but says that he did not stop. The undisputed testimony in this case is that the stop sign that was at the intersection was facing the southwest towards the direction from which the automobile in which plaintiff's wife was riding was approaching and was not facing towards the east directing appellant's driver to stop. If the stop sign had been facing east directing appellant's driver to stop, but it was not, there is no pleading or evidence to show by what authority the stop sign was placed there. Unless the stop sign had been placed at the intersection by the proper authority, it would have been no protection to the plaintiff's wife. Daniels v. Ramirez, Tex.Civ.App., 209 S.W.2d 972, 975.

"Nor is there any showing by what authority the sign was put there. As a matter of fact, there is and was on the date of the accident a large black X across the face of it. Anyone might have been justified in the conclusion it was a cancelled out sign and was not intended to be observed, and more especially since there was none on the opposite side. Certainly a stop sign erected without authority or maintained without it could impose no duty. So, under the record made here the sign was no protection for Daniels."

It is said in the case of Hoover v. Blackmore, Ohio Mun.Ct., 87 N.E.2d 477, 480:

"It is argued that the court should interpret the State statute as extending the police power of the county to include the discretionary acts of the county engineer because his acts 'best serve the interest of the public.' Extending this argument, we would be required to recognize the act of any county officer or employee who individually acted in the interest of the public. It can readily be appreciated that such a position would destroy organized government. In the county, the commission is the only body having authority to adopt police regulations."

The evidence reveals the collision occurred upon the streets of the City of Amarillo. Such streets are subject to control by the city. These facts raised a crucial issue in the cause—the trial court erred in taking judicial notice that the stop sign was placed at the city street intersection by proper authority of the city officials and in predicating his entire charge on the erroneous assumption that such sign was authorized by proper ordinance and placed on appellant the duty to stop. State ex rel. Osborn v. City of McAllen, Com.App., 127 Tex. 63, 91 S.W. 2d 688, 692.

"Judicial notice is not taken of municipal ordinances, but they must not only be proven, but pleaded like other facts. City of Austin v. Walton, 68 Tex. 507, 5 S.W. 70; 17 Tex.Jur. p. 141, § 13; 19 R.C.L. p. 907, § 205."

Under the pleadings and evidence of this case, the court submitted the cause to the jury upon an improper theory. In the submission of Subdivision (a) of Special Issue No. 1, the court erroneously assumed that the taxicab driver was under a duty to stop at the intersection. By the submission of this issue, based upon the erroneous assumption that appellant's driver was under a legal duty to stop at the intersection, the jury was naturally led to assume and consider that the driver of the taxicab was under a legal duty to first stop at the intersection and look and this improperly influenced such jury in answering Subdivision (a) of Special Issue No. 2 as to whether the taxicab driver "as he approached the street intersection" failed to keep a proper lookout. In answering Subdivision (a) of Special Issue No. 3 as to whether the driver of the taxicab failed to maintain over the vehicle he was driving such a degree of control as would have been maintained by a person of ordinary care and prudence under the same or similar circumstances, the jury would naturally find that the driver did not maintain control over the vehicle he was driving in that he did not stop the same when he was

under a legal duty to do so. The erroneous instruction would likewise permeate and influence the jury's answer to Subdivision (a) in Special Issues Nos. 4 and 5.

Under the pleadings and the evidence in this case, the turning of the stop sign to face the southwest and the issue as to whether the record revealed a legal duty to stop as imposed by the sign in any event are the controlling issues. If the parties were not under a duty to stop before entering the intersection, neither would be negligent, but upon entering the intersection at the same time the one approaching from the right would have the right of way. The evidence is undisputed that appellant's driver approached the intersection from the right. The Supreme Court of Wisconsin in the case of Schmit v. Jansen, 247 Wis. 648, 20 N.W.2d 542, 543, 162 A.L.R. 925, in discussing a similar case said:

"The turning of the stop sign set the stage for the collision. Each party was relying on a rule of the road under circumstances which appeared to then and there exist. Defendant was on an arterial and reasonably assumed she had the advantage of proceeding over one approaching the highway. The deceased, because the stop sign had been misplaced, reasonably assumed he had the advantage, because of being to the right of plaintiff and therefore having the right to proceed into the intersection. The reliance placed by each on the view as he saw it was not unreasonable. Deceased was a stranger in the town. He was not aware that Wisconsin avenue was an arterial highway. Defendant was a resident of Appleton and familiar with the highway and its intersecting streets. If neither was guilty of negligence, the turning of the stop sign would excuse each for proceeding until the approach of the other car called for some preventive act on the part of the driver. The evidence indicates that both defendant and deceased were using the same degree of caution and that the collision resulted

because each, while exercising such care, relied on his right of way.

"Neither the action of defendant or plaintiff's deceased in entering the intersection can be held negligent. And under the evidence, the acts of defendant after both cars were in the intersection cannot be held to be negligent conduct."

It being undisputed that the stop sign at the intersection in question was not visible, the appellant's driver was not required to stop. Hoover v. Blackmore, Ohio Mun. Ct., 87 N.E.2d 477, 480.

"Since the sign involved in this case was not visible and could not have advised the defendant of any danger, we cannot consider its presence in determining the question of the exercise of ordinary care by the defendant.

"Consequently, we must find that the defendant was not required to stop before entering the intersection and further that since the defendant was approaching the intersection on the right, he was entitled to the right-of-way, that is, to proceed uninterruptedly in a lawful manner into the intersection."

The trial court in this case by the submission of Subdivision (a) of Special Issue No. 1 held as a matter of law that the appellant's driver was under a legal duty to stop at the intersection of 34th Street with Polk Street. The case being submitted to the jury upon an erroneous assumption and a theory inconsistent with the pleadings and the evidence prevented the jury from giving a fair consideration to the issues under the evidence in the cause. Texas Electric Ry. Co. v. Jones, Tex.Com. App., 243 S.W. 980, 982.

"Where, as in this case, a charge given to the jury is erroneous as a matter of law, and a verdict responsive thereto is returned, the error is not cured by the fact that such verdict might have been returned in response to another and correct charge also given. It is impossible for the court to determine whether the verdict in this case was based on this peremptory charge or upon that paragraph of the charge authorizing a recovery by plaintiff if the jury found that he was injured as the result of negligence on the part of defendant's foreman. It might have been based on the one or the other. Burgher v. Floore, 107 Tex. 112, 115, 174 S.W. 819; Railway v. De Walt, 96 Tex. 121, 133, 134, 70 S.W. 531, 97 Am.St.Rep. 877; Baker v. Ashe, 80 Tex. 356, 360, 361, 16 S.W. 36; Railway v. Sage, 98 Tex. 438, 440, 441, 84 S.W. 814; Railway v. Rogers, 89 Tex. 675, 679, 680, 36 S.W. 243.

\*　\*　\*　\*　\*　\*

"The charge complained of in this case was not a correct proposition of law properly applied to the facts, but was affirmatively erroneous on the vital issue of plaintiff's right to recover, and it was not corrected nor rendered harmless by the other paragraphs of the court's charge. Railway v. Rogers, 89 Tex. 675, 678, 36 S.W. 243; Railway v. Welch, 86 Tex. 203, 207, 24 S.W. 390, 40 Am.St.Rep. 829."

Appellant's first assignment of error will be sustained. A ruling is not required as to issue of excessiveness of the judgment since the case is being reversed and such excessive judgment may not arise in another trial.

Reversed and remanded.