B. N. MASON v. YELLOW CAB AND BAGGAGE COMPANY

No. A-4551. Decided May 19, 1954.
Rehearing overruled June 9, 1954.
(269 S.W. 2d Series 329)

*Merchant & Fitzjarrald, Adkins, Folley, Adkins, McConnel & Hankins* and *A. B. Hankins*, all of Amarillo, for petitioner.

The Court of Civil Appeals erred in holding that the submission of the issue enquiring whether or not defendant's driver failed to stop before entering the intersection was an instruction to the jury which, as a matter of law, improperly influenced the jury to answer other issues in favor of plaintiff. Coca Cola Bottling Co. v. Krueger, 239 S.W. 2d 669; Dallas Ry. & Term. Co. v. Orr, 147 Texas 343, 215 S.W. 2d 862; Pope v. Jackson, 211 S.W. 2d 958.

*Culton, Morgan, Britain & White, L. A. White*, all of Amarillo, for respondent.

The Court of Civil Appeals correctly held that the evidence failed as a matter of law to show an imposition of a duty on the driver of the cab to stop, and that the submission of the special

issue influenced the consideration by the jury of issues respecting speed, lookout, control and application of the brakes. City of Houston v. Woolridge, 241 S.W. 2d 641; Louisiana & A. Ry. Co. v. Chapin, 224 S.W. 2d 614; Collins v. Smith, 175 S.W. 2d 407.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

Concluding that the submission by the trial court to the jury of a particular group of special issues was in effect an improper comment on the weight of the evidene as regards other issues, the Court of Civil Appeals has reversed a judgment awarding damages to our petitioner, Mason, who was plaintiff below, the cause being remanded for another trial. 266 S.W. 2d 463.

The suit grew out of a street intersection collision in the City of Amarillo between the automobile of the petitioner-plaintiff going north on a thoroughfare or "through street" (Polk Street) and a motor cab of the respondent (defendant below) Yellow Cab & Baggage Company, Inc., going west on a less privileged street (34th Avenue).

The novelty of the situation is that undoubtedly the stop sign at the intersection, which was originally placed so as to have warned the cab driver to stop for the thoroughfare, along which the car of the petitioner-plaintiff was approaching, had somehow, and prior to the accident, been turned about 90 degrees so as to face, not eastwardly toward the oncoming cab, but southwardly down the thoroughfare toward the oncoming car of the petitioner-plaintiff.

The first group of special issues (alleged source of the improper comment) enquired whether the cab driver "failed to stop before entering the intersection," and whether such failure, if any, was negligence and a proximate cause of the collision. In addition to this group, which was answered favorably to the petitioner-plaintiff, there were also submitted and similarly answered four additional three-issue groups respectively enquiring as to the conduct of the cab driver and its character as causal negligence in the following respects: (b) failure "as he approached the street intersection, * * * to keep a proper lookout for vehicles approaching said intersection from the south on Polk Street" (as the car of the petitioner-plaintiff was); (c) failure "to maintain over the vehicle he was driving such degree of control as would have been maintained by a person of ordinary care and prudence * * *"; (d) "driving at a greater rate of speed than a person of ordinary care and prudence would have driven

* * *"; (e) failure "to apply his brakes as he approached the place where the collision occurred."

The thesis which the defendant successfully urged as appellant in the Court of Civil Appeals and urges again here as respondent is: (1) the abovementioned first group of special issues implied that, and thus instructed the jury that, the cab driver had a duty to stop for the intersection, although he had no such duty, since admittedly the stop sign was not facing him; and (2) this improper admonition to the jury "was so related to, and the other issues" (items (b)-(e) above) "were so dependent upon, the assumed obligation to stop that the jury did not give fair consideration to the issues under the evidence." In connection with the matter of the position of the stop sign, it should perhaps also be noted that the trial court submitted, among the issues bearing on contributory negligence, No. 7(a), enquiring whether the sign "had been turned from its normal position so as to face toward traffic approaching on Polk Street from the south," and also submitted Special Issue No. 10 as to whether "the position in which the stop sign * * * was turned at the time in question was not the sole proximate cause of the collision * * *." Thus in the light of the charge as a whole it can hardly be said, and in fact it is not even contended, that the submission of the first group of issues inferred the sign to have been facing eastwardly as it should have been rather than southwardly as it was.

The object of the point made by the respondent-defendant is, of course, not merely to escape the effect of the first group of findings, but, more importantly, the effect of groups (b) through (e) abovementioned, which would otherwise be each a valid separate ground of recovery sustaining the trial court judgment for the petitioner-plaintiff. We adhere to the view taken when we granted the writ of error, that the Court of Civil Appeals erred in sustaining the point in question.

■ Assuming, as we shall assume, that the cab driver had, under the evidence, no duty to stop when the sign was not facing him, and thus assuming also that the first group of issues abovementioned should have been omitted from the charge, must we yet (a) imply the admonition or instruction that the respondent-defendant would imply and (b) say that this implied instruction vitiates the additional findings of primary negligence? Evidently it is true that a particular special issue may, because of an assumption, or apparent assumption, of fact involved in the terms in which it propounds a question, constitute an implied comment or instruction either with respect to the theory of recovery or

defense wherewith that same issue is concerned or with regard to theories which are the subject matter of other special issues. It is obviously improper, for example, to submit, "Did the defendant keep a lookout just preceding the collision in which the plaintiff suffered his broken back?", when there is a serious question on the evidence as to whether the plaintiff had an injured back. See Texas Employers' Insurance Association v. McKay, 146 Texas 569, 210 S.W. 2d 147; City of Houston v. Woolridge (Tex. Civ. App. wr. of er. ref. n.r.e.) 241 S.W. 2d 641. But as indicated by the McKay decision, an issue of the type mentioned does not always entail a reversal, since under the circumstances of the particular case, including the charge as a whole, the force of the comment may be so weak that the latter is either not a comment at all or may be said to be harmless. In the McKay case, the alleged comment consisted of a reference to the plaintiffs' "injury" (without the usual qualifying phrase, "if any") in a defensive issue regarding the effect of disease on his alleged disability, the existence of an injury being itself in question and the subject matter of other issues.

■ In the instant charge, the existence of the comment or instruction in question is more inferential or speculative than in charges or issues of the type considered in the McKay or City of Houston cases, supra. The judge here did not refer in so many words to a duty of the cab driver to stop. He enquired whether the driver failed to stop, and whether such failure, if any, was causal negligence. For the jury to convert this enquiry into an instruction that the driver owed a duty to stop requires something of the academic mind. The latter observation is also true as to the further mental process whereby the jury should apply the instruction—once inferred—to the other issues, so as to reason, as the respondent-defendant would have it do, that, since the driver owed a duty to stop and did not stop, he thus also necessarily failed to keep a proper lookout, have his car under control, drive at a reasonable speed and apply his brakes. This line of reasoning becomes still more theoretical, when we consider that the duty, which the jurors are said to infer, could scarcely be in their minds an absolute one, since the offending issues in effect merely asked the jury, "Do *you think* the driver should have stopped?" That such an enquiry would affect the jurors in their answers to the other issues seems considerably less likely than if the judge had, for example, said, "I instruct you that the driver should have stopped." If the jury had been sensitive to inferences, might it not as well have carried its speculations one step further and said to itself, "But, if the judge

*does* think the cab driver owed a duty to stop for the intersection, why did he ask *us* to say whether his failure to stop was negligence, and why did he ask us all those additional questions about lookout, speed, control and brakes?"

Nor, looking at the matter in another way, is the connection between the duty to stop and the other matters submitted by any means a necessary one. Even if the alleged instruction had been express and positive, the jury might well have answered the other issues as it did, without considering the matter of a duty to stop. If we should, for example, vary the instant facts so as to include evidence that the driver was racing with another car or driving with a female in his arms, as some drivers are wont to do, is it not even likely that the jury in answering the additional issues as to lookout, control, speed and brakes would look to the evidence mentioned rather than to an instruction that the driver had a duty to stop?

In brief, it is our opinion that the respondent's theory of harmful error in the charge, while far from fanciful, is yet too theoretical to justify a reversal. Especially in an already complicated field like that of special issues, we cannot strain too hard for perfection without ultimate damage to the whole jury system in civil cases. Our conclusion is, moreover, in line with the policy of our more recent decisions in the domain of harmless error, such at Texas Power & Light Co. v. Hering, 148 Texas 350, 224 S.W. 2d 191.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion delivered May 19, 1954.

### ON REHEARING

MR. JUSTICE GARWOOD delivered the opinion of the Court.

The motion for rehearing invites our attention to the fact that the Court of Civil Appeals, in reversing the cause on the appeal of the defendant-respondent, pretermitted disposition of the assignment that the remittitur exacted by the trial court was inadequate to cure the excessiveness of the verdict. We accordingly revoke that portion of our judgment affirming the judgment of the trial court and hereby remand the cause to the Court of Civil Appeals for further proceedings not inconsistent with our main opinion. Otherwise, the motion for rehearing is overruled.

Opinion delivered June 9, 1954.