**YELLOW CAB AND BAGGAGE COMPANY, Inc., Appellant,**

v.

**D. N. MASON, Appellee.**

No. 6369.

Court of Civil Appeals of Texas.

Amarillo.

Oct. 4, 1954.

Remittitur Filed Oct. 18, 1954.

Culton, Morgan, Britain & White, Amarillo, for appellant.

Merchant & Fitzjarrald, Adkins, Folley, McConnell & Hankins, Amarillo, for appellee.

## PER CURIAM.

On a former hearing on appeal of this case, 266 S.W.2d 463, this Court held that the case should be reversed and remanded for another trial. Holding that since the appellee pleaded, as a first act of negligence, the failure of appellant's driver to stop at the stop sign located on 34th Street and based the remaining issues of negligence on such failure, the same was erroneous in assuming that there was a stop sign properly placed at 34th Street to stop traffic entering Polk Street from the East. Other allegations of negligence and issues submitted to the jury being and concerning appellant's driver's negligence as he approached the intersection of 34th Street and Polk Street and failure to keep proper look-out; failure of the driver to bring the vehicle to a complete stop before driving into the intersection of 34th Street and Polk Street; failure of the driver to have the car under that degree of control that a person of ordinary prudence would have maintained over the same under the same or similar circumstances; negligence of the driver in operating said motor vehicle at an excessive rate of speed under all of the facts and circumstances, and failure of the driver to apply his brakes at the intersection of Polk Street and 34th Street.

We were of the opinion that since there was no issue of fact as to whether appellant's driver stopped at said intersection and the undisputed record was that he did not stop, that there was no issue of fact to submit to the jury on this point. There being no stop sign there requiring appellant's driver to stop, there was nothing requiring said driver to bring his car to a complete stop; no showing as to an excessive rate of speed; no reason to apply his brakes at the intersection unless there was a stop sign at the intersection requiring these things to be done. Being of the opinion the case should be reversed, we did not pass upon the question of the excessiveness of the judgment. The Supreme Court, 269 S.W.2d 329, did not agree with our holdings but reversed the judgment of the Court and affirmed the judgment of the trial court. Upon motion for re-hearing, the Supreme Court remanded the cause to this Court for further proceedings as to the excessiveness of the judgment, but, in all other matters, affirmed the judgment of the trial court.

The jury in the original suit found the amount of damages to be $25,833.00. The trial court realized the excessiveness of this amount and required a remittitur of $10,833 and appellee remitted the $10,833 and judgment was granted for appellee for $15,000. The only question to be here determined is whether to affirm the amount of $15,000 or require further remittitur.

Mrs. Mason was injured about 12:30 p.m. on August 22, 1952. This case was originally tried in April, 1953. Immediately after the accident, Mrs. Mason was carried to the Northwest Texas Hospital but remained there only a short time when she was taken home. Her right ear began to hemorrhage or bleed about 5 o'clock that afternoon when she was sent back to the hospital but was sent home the next morning. That was on Friday when she was sent home. Appellee testified that on the Monday following, she

was having terrible pains in her ear and head and was sent back to the hospital where she remained eight or nine days. She was never in the hospital after that time.

Dr. Winsett and Dr. Chase were her doctors and the only doctors that treated her from the date of the accident, and they both were called to testify by appellant. Dr. Winsett was her first doctor and took X-Rays of her skull, hip, pelvis and cervical spine at the time immediately after the accident but was unable to find any evidence of fracture or dislocation on any of them and did not find any fracture particularly as to her skull. The last time Dr. Winsett treated her was about a month or six weeks before the trial. At her last visit to Dr. Winsett, she complained of a dull type of diffused headache and a concurrent nervousness and tension that was disturbing her. Dr. Winsett further testified he still would not diagnose her case as a fractured skull.

Dr. Marsalis made an examination of Mrs. Mason the day before the trial. He took X-Rays of the skull and vertebrae of the neck but did not find any evidence of any fracture of her skull but stated that if she had a skull fracture at the time of the injury, it was his opinion that she had recovered from it.

Dr. Van Sweringen testified he examined Mrs. Mason October 31, 1952 and January 21, 1953. He took X-Rays of her head and testified that they did show a fracture beginning at the base and going up through the mastoid portion of the temple bone. He further testified it was his opinion that this condition would remain permanent throughout all of her life.

Dr. Royse testified he examined Mrs. Mason at the same time she was examined by Dr. Van Sweringen and consulted with him and examined the X-Ray pictures made by Dr. Van Sweringen. He testified he found a fracture of the skull on the right-hand side in the occipital region extending into the mastoid cell area. He also found a ruptured ear-drum on the right-side with a small hemorrhagic spot on the right ear drum and that the pupils of her eyes reacted sluggishly to light and accommodation which would indicate some disturbance in her brain. He further testified, in his opinion, she was not able to carry on manual or physical labor. Neither Dr. Van Sweringen nor Dr. Royse ever treated Mrs. Mason but examined her solely for the purpose of testifying in this case.

Dr. Chase, an eye, ear, nose and throat specialist, seems to have been the main doctor treating Mrs. Mason all during her trouble. He first saw her three days after the accident as she was referred to him by Dr. Winsett. He testified when he first examined her, it was his impression that she had a basal skull fracture involving the roof of the right tympanum of the right middle ear and a tear in the right ear drum. He did not take an X-Ray or have one made but did determine that she had a ruptured ear drum. He treated her on up until October 3, 1952. He made his final examination of Mrs. Mason on April 9, 1953 and found her condition to be normal. Dr. Chase made his report on Mrs. Mason's condition four days before she was ever examined by Dr. Van Sweringen and Dr Royse. Under this record, we are of the opinion that the sum of $15,000 as damages is so excessive that we cannot approve of the same and are of the opinion that this judgment should be reduced to the sum of $4,000, and require a further remittitur of $11,000.

If this remittitur is filed within twenty days from this date, the judgment of the Court below will be affirmed; otherwise, it will be reversed and the cause remanded. Affirmed on condition of remittitur.

PER CURIAM.

On this the 18th day of October, 1954, the appellee having filed his remittitur in the sum of $11,000, the judgment of the trial Court is accordingly reformed and affirmed.