**AUSTIN ROAD COMPANY, Inc., et al.,**
**Appellants,**

**v.**

**W. E. THOMPSON et ux., Appellees.**

**No. 15580.**

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 28, 1955.

Rehearing Denied Feb. 25, 1955.

522

Earl L. Coleman, Denton, Strasburger, Price, Kelton, Miller & Martin, Fred K. Newberry and Hobert Price, Dallas, for appellant.

Cantey, Hanger, Johnson, Scarborough & Gooch, Howard Barker, Charles L. Stephens and George R. Bridgman, Fort Worth, for appellee.

RENFRO, Justice.

Appellees W. E. Thompson and wife brought suit against E. W. Collingsworth, Jr., and Austin Road Company for damages for injuries sustained in a collision between an automobile driven by appellee

Thompson and a gravel truck driven by Collingsworth. It was stipulated Collingsworth was, at the time, in the course of his employment with Austin Road Company.

The jury found in answer to special issues: (1 and 2) Collingsworth failed to keep a proper lookout and such failure was a proximate cause of the collision; (3 and 4) Collingsworth failed to yield the right-of-way and such failure was a proximate cause; (5, 6 and 7) Collingsworth failed to stop his truck prior to entering Highway 121, this failure was negligence and was a proximate cause; (10 and 11) the rate of speed at which Collingsworth entered the intersection was negligence and a proximate cause; (14, 15 and 16) Collingsworth failed to timely apply his brakes prior to entering intersection and such failure was negligence and proximate cause; (17 and 18) act of Collingsworth in stopping the truck on Highway 121 immediately prior to the collision was negligence and proximate cause; (21 and 22) failure of Austin Road Company to have truck warning sign near the intersection of its gravel pit road and Highway 121 was negligence and proximate cause; (23, 24 and 25) Collingsworth was an incompetent driver, which fact was known to Austin Road Company and act of Company in entrusting the operation of the gravel truck to Collingsworth was proximate cause; (36–46) the jury failed to find appellee Thompson guilty of any act of negligence; (47) appellee Thompson was awarded $7,000 damages for his injuries; (48) was awarded $8,000 for injuries sustained by his wife; (49) appellees' minor son was awarded $100; (50 and 51) appellee Thompson was awarded $800 for medical and doctors' expenses to time of trial, and $1,700 for such expenses in care and treatment of his wife; (53) he was awarded $1,000 for future hospital, medical, etc., expenses.

The judgment entered by the court included the above amounts plus $1,075 for damages to the automobile driven by appellee Thompson, making a total of $19,-675.

Issue No. 3 and accompanying instruction were given as follows: "Do you find from a preponderance of the evidence that the defendant, E. W. Collingsworth, Jr., failed to yield the right-of-way to the automobile driven by W. E. Thompson on the occasion in question?'

"In connection with the above special issue you are instructed that the driver of a vehicle is required to stop at the entrance to a through highway and yield the right-of-way to other vehicles which have entered the intersection or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said highway shall yield said right-of-way to the vehicles so proceeding into or across the through highway. You are also instructed that the driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right-of-way to all vehicles approaching on said highway."

Appellants' first six points of error attack the issue and instruction on the grounds: (a) there was no evidence the road was a through highway; (b) it assumes Collingsworth had a duty to yield the right-of-way; (c) same is a comment on the weight of the evidence; (d) the evidence is undisputed Thompson was at least 200 feet from the intersection when Collingsworth entered same; (e) issue assumes that laws of state regulating vehicular traffic were applicable to the case; (f) use of the words, "through highway," was comment on weight of the evidence since road had not been turned over to the State nor designated by the State as a public road.

Article 6674a, Vernon's R.C.S., defines "highway" as any public road or thoroughfare or section thereof and any bridge, culvert or other necessary structure appertaining thereto. The term "improvement" includes construction, reconstruction or maintenance, or partial construction, re-

construction or maintenance and making all necessary plans and surveys preliminary thereto. Articles 6674b provides that all highways included in the plan providing a system of state highways as prepared by the State Highway Engineer in accordance with Section 11 of Chapter 190 of the General Laws of the Regular Session of the Thirty-fifth Legislature, Vernon's Ann. Civ.Statutes, Article 6670, are designated as the " 'State Highway System.' " Under Article 6674q–4, improvements of the State Highway System are placed under the control of the State Highway Department.

The highway in question was being constructed according to plans and specifications prepared by the Highway Department. A State Highway Engineer was assigned to the project. The road was designated as State Highway No. 121.

Highway 121 extended from a point near the town of Lewisville to McKinney. It had been partially graveled, but required another layer of gravel and topping before completion. Austin Road Company was contractor for the gravel work.

At the point of collision, appellant Austin Road Company had constructed a private road leading from Highway 121 to its gravel pits some distance away. There was an embankment immediately west of the point where the private road entered Highway 121, which greatly, if not wholly, blocked the view of persons traveling east on Highway 121, as appellees were on this occasion. The private road dead-ends on Highway 121, there being no road going north of Highway 121. Appellant Austin Company had a number of trucks using the private road. The trucks would enter Highway 121 and make a left hand turn on Highway 121 and proceed west to dump gravel at some point on the Highway. Only trucks of defendant Austin Company used the private road.

Under provisions of Article 6701d, Sec. 13(b), the gravel pit road was a private road. Article 6701d, Sec. 74, places the duty on the driver of a vehicle entering a highway from a private road to yield the right-of-way to all vehicles approaching on said Highway.

It is admitted by appellants' witnesses that the public was habitually using Highway 121 at the time in question. The evidence shows that automobiles could and did at the time in controversy travel the entire distance of Highway 121 from Lewisville to McKinney. No work was being done by Austin Company on the Highway anywhere near the intersection with the private road. The public was using Highway 121 as a public roadway and both the State Highway Department and appellants knew of such use. No attempt was made by either to prevent such usage.

Article 6701d, Sec. 13(f), defines "Through Highway" as "Every highway or portion thereof at the entrances to which vehicular traffic from intersecting highways is required by law to stop before entering or crossing the same and when stop signs are erected as provided in this Act."

The evidence is undisputed that no barricades were placed across Highway 121 at the point where appellees entered same. There is evidence of signs reading "Road Under Construction" and "Slow," at points near where appellees entered Highway 121, but these certainly do not inform the traveling public the road is not open to traffic.

There is some indication a sign reading "Closed to through traffic" may have been erected at or near the Lewisville entrance to Highway 121, but no issue was submitted to the jury nor any requested as to the existence and sufficiency of such sign at the point where appellees entered same.

■ Since the road was a "highway", under the circumstances as disclosed by the record, the driver of the truck was required to yield the right-of-way to all vehicles "approaching on said highway." Article 6701d, Sec. 74. Without the word "through" before the word "highway" in the court's instruction there could be no objection to the same. By inserting the word

"through" before the word "highway" and by instructing the jury that a vehicle is required to yield the right-of-way to other vehicles which are approaching so closely on said through highway as to constitute an "immediate hazard," the court went further than he was required to go. Under the instruction the jury was permitted to find, if the evidence so warranted, that appellees' automobile was not so close to the intersection as to constitute an "immediate hazard" requiring him to yield the right-of-way.

The issue itself did not tell the jury anything. It merely asked the jury if the defendant Collingsworth failed to yield the right-of-way, and No. 4 inquired if such failure, if the jury answered "yes" to issue 3, was a proximate cause of the collision. We have set out the instruction in full. The instruction does not tell the jury that appellees had the right-of-way and does not assume that Collingsworth had the duty to yield the right-of-way. It set out when and under what circumstances a driver is required to yield the right-of-way. By Collingsworth's own testimony he saw appellees' car approaching. There is no controversy as to the fact that Collingsworth drove his truck from the private road into the intersection with Highway 121 just prior to the collision.

In Ditta v. Pogue, Tex.Civ.App., 249 S.W.2d 938, 939, an issue very similar to the one here involved, with a similar objection, was under discussion. There the court said: "This reply of the appellee to appellant's Point No. 1, as made by the appellee, is adopted as a complete answer thereto: '* * * there was no error in the trial court's submission of Special Issues Nos. 5 and 6, because the first of said issues is a paraphrasing of Sec. 74 of Art. 6701–d of the R.C.S. of the State of Texas, 1925, (Uniform Act Regulating Traffic on Highways); that said issue did not assume any fact or group of facts; that said issue is amply supported not only by a preponderance of the evidence, but by uncontradicted evidence; and was, therefore, properly submitted, along with its companion issue of proximate cause.'" The court cites many cases as authority. In the instant case much of the testimony relating to the actions of the drivers is uncontradicted; certainly there is a preponderance of the evidence, if believed by the jury, to uphold its findings.

Assuming that issue No. 3 and the instruction were erroneous, that error, if such, should not destroy the other findings of primary negligence found against the defendants by the jury. Mason v. Yellow Cab & Baggage Co., Tex.Sup., 269 S.W.2d 329.

■ Assuming that Collingsworth had no duty to yield the right-of-way, that the court was in error in submitting the issue and instruction, and the jury wrongfully believed he should have yielded the right-of-way, we see no logical reason why the jury should carry the instruction over into consideration of other issues having no bearing on yielding the right-of-way. For instance, the jury found in answer to issues 1 and 2 that Collingsworth failed to keep a proper lookout which was a proximate cause of the collision, and he failed to apply his brakes before entering the intersection, and that he stopped his truck in the intersection; the Austin Road Company did not have warning signs at the intersection. These issues had no relation to the failure to yield the right-of-way. Its agents knew Highway 121 was traveled extensively by the public, and that it had many gravel trucks entering the highway each day from its private road, at a point where its trucks were partially obscured immediately prior to entering the intersection. So, even if there was error in the manner of submitting issue 3 and the instruction thereto, the jury might well have answered the other issues as it did without considering the matter of yielding the right-of-way. Mason v. Yellow Cab & Baggage Co., supra.

Points one through six are overruled.

Appellants' points seven through eleven complain of certain testimony of Dr. Levy given in behalf of plaintiffs because "Dr.

Levy never treated plaintiffs and was hired for the purpose of testifying in this case."

Dr. Levy saw and examined both Thompson and wife on March 21, 1952, and December 11, 1953, and Mrs. Thompson on October 27, 1952.

Appellees lived in Abilene. Prior to going to Dr. Levy they had been treated by several doctors in Abilene and in East Texas where they had formerly lived.

Thompson testified that Dr. Levy was recommended to him by a fellow-employee and several other people in Abilene, and, according to his testimony, "if I wanted further proof that I come down and have Doctor Levy check me, and I could ask his recommendations, that I could rely on it. Not that I had two diagnoses, but I was afraid of an operation and I wanted to do everything to keep from having one." Thompson requested Dr. Levy to send a copy of his report to his lawyer. There is no evidence appellees' lawyer sent him to Dr. Levy or knew that he was going to Dr. Levy, other than Dr. Levy's testimony he thought Mr. Barker recommended they come to him.

Dr. Levy was asked what treatment he prescribed for them. He answered, "I recommended physical therapy treatment, and referred them back to Hodges and Hooks at Abilene." Dr. Levy recommended to Mrs. Thompson physiotherapy treatment to back and neck, and some sort of head halter traction and exercises for the neck and back. Dr. Levy also testified as to the amount of his bill for "examining and prescribing" for appellees. Thompson testified Dr. Levy's bill was for physical examinations and recommendations, and that the doctors' bills, which included Dr. Levy's, were incurred for the "purpose of securing relief from pain." Again Thompson testified he went to Dr. Levy "so that I would have additional information that I could rely on, such as having an operation was concerned."

Dr. Levy recommended the continued use of a brace for Thompson.

Mrs. Thompson testified she was treated three times by Dr. Hooks at the suggestion of Dr. Levy. Dr. Levy, in addition to advising Mrs. Thompson to take certain treatments from Dr. Hooks at Abilene, wrote Dr. Hooks a letter making certain recommendations for treatment of Mrs. Thompson. Mrs. Thompson testified that on each of the first two occasions she visited Dr. Levy he recommended physical therapy and exercise. She followed his recommendations.

On cross-examination the questions were asked Thompson: "You have never been treated by Doctor Levy, have you" and "she (Mrs. Thompson) never has been treated by Doctor Levy, has she?" The witness answered, "No, sir." In response to a like question on cross-examination, Dr. Levy answered, "No."

Dr. Levy, and the record so shows, is an outstanding orthopedic surgeon. Appellees had been to several doctors, and, according to the evidence, continued to suffer from their injuries. It is not unusual that people suffering from ailments such as they had would seek the best doctor available.

There is no direct testimony that they had Dr. Levy examine them for the purpose of testifying.

The testimony that Dr. Levy did not treat them does not controvert the testimony that they went to him for treatment and that he did recommend treatment. Dr. Levy knew Dr. Hooks as a competent doctor who would carry out the recommended treatments.

■ We think the evidence as a whole must be construed to show that appellees went to Dr. Levy for diagnosis and treatment—certainly we cannot hold that the evidence shows they went to him for the purpose of qualifying him to testify as a witness.

■ We think the fact Dr. Levy did not actually treat appellees does not make inadmissible his testimony based partly on his-

tory as given by appellees. He was qualified to testify if they went to him for treatment and not for the mere purpose of qualifying as an expert witness. United Employers Casualty Co. v. Daniels, Tex. Civ.App., 142 S.W.2d 607. In the above case the doctor did not prescribe treatment that would improve the patient's condition. In the instant case Dr. Levy did prescribe treatment.

■ "'The opinion of a physician or surgeon as to the condition of an injured or diseased person is not rendered incompetent by the fact that it is based upon the history of the case given by the patient to the physician or surgeon on his examination of the patient, when the examination was made for the purpose of the treatment and care of the patient.'" Federal Underwriters Exchange v. Carroll, Tex.Civ.App., 130 S.W.2d 1101, 1104, citing Missouri, K. & T. R. Co. v. Rose, 19 Tex. Civ.App. 470, 49 S.W. 133. See also Texas General Indemnity Co. v. McNeill, Tex.Civ. App., 261 S.W.2d 378.

■ Since appellees went to Dr. Levy for treatment, we think the court did not err in admitting his testimony. The points of error on said rulings are overruled.

Points twelve and thirteen contend it was error for the court to permit Dr. Levy to testify that in his opinion it was possible Mr. Thompson might have to have a spinal fusion operation and that Mrs. Thompson's shoulder might even require some surgery in the future. Points twenty and twenty-one claim error on the part of the court in submitting issue No. 52 inquiring whether or not Thompson will necessarily incur doctor and medical bills in the future, and No. 53 inquiring as to the sum of money necessary for future treatment.

■ Although the jury was asked whether Mrs. Thompson would necessarily incur expenses for medical and doctor's services in the future, no issue was submitted as to the amount, if any, of such future expenses and no such finding was made, and the judgment did not allow any such expenses. The error, then, in admitting Dr. Levy's testimony is, in our opinion, harmless.

Dr. Levy was asked about the probability of a future spinal fusion operation for Mr. Thompson. He answered that in the light of the progress made since March, 1952, he would change the category of surgery from the probable he thought then to possible as of the time of the trial.

Separate issues were submitted to the jury inquiring whether Mr. Thompson would necessarily incur medical and doctor's expenses in the future and the amount thereof, to which the jury answered, $1,000. The appellees have filed a remittitur of said $1,000.

The appellants rely on the rule approved by the Supreme Court in Houston & T. C. R. Co. v. Fox, 106 Tex. 317, 166 S.W. 693, 695, wherein it is held: "'To justify the assessment of damages for apprehended future consequences of a present injury, it is not enough that such consequences may occur, but there must be a reasonable probability—that is, it must be reasonably certain that such consequences will ensue.'"

It will be noted the question asked the doctor was proper and the first part of the answer was proper. The last part of the answer was not responsive to the question.

■ Since the amount allowed appellee Thompson for future hospital, doctor, drug, etc., expenses was submitted in a separate issue, the amount found by the jury for such expenses is certain and fixed. The remittitur cures any error of which complaint is made pertaining thereto, and does not warrant a reversal of the case.

The fourteenth point contends the court erred in failing to grant appellants a new trial because of appellees' counsel asking Thompson if Dr. Hooks had diagnosed his condition as a ruptured disc. Objection was made to the question. It was not answered. The court instructed the jury

"as to what the doctor told Mr. Thompson about his condition, if anything, you will disregard that phase of this testimony."

The fifteenth point alleges the trial court erred in not granting a new trial because of appellees' asking Mr. Thompson if Dr. Hooks had given him a letter giving an opinion as to his condition. Appellants' objection was sustained and the question was not answered.

■■■ Improper, though unanswered, questions may inject into the record improper and prejudicial matters resulting in so much harm as to require a reversal. No such situation appears in the case before us. Texas Employers' Insurance Association v. Brock, Tex.Com.App., 36 S.W.2d 704.

Points fourteen and fifteen are overruled.

Points sixteen and seventeen contend it was error for the hypothetical question propounded to Dr. Levy to contain a statement that Mr. Thompson finished his enlistment with the Marine Corps without getting a medical discharge and had not drawn any disability benefits from the Government, and in permitting Thompson to testify that no doctor, prior to the accident in question, had ever told him he had a ruptured disc.

Previous to Dr. Levy's testimony, Thompson had testified that he had received an honorable discharge from the Marine Corps and that he had never received any disability benefits from the Government.

■■■ Appellants contended throughout the trial that Mr. Thompson's complaints were not due to injuries sustained in the accident, but were due to a prior back ailment. Under the circumstances, as disclosed by the record, no reversible error is shown.

In submitting issue 47 (damages sustained by Thompson) the jury was instructed it could take into consideration (a) "physical pain and mental anguish suffering sustained by him to this date," and in issue 48 (damages sustained by Mrs. Thompson) the jury was instructed it could take into consideration (a) "physical pain and mental suffering sustained by her to this date."

■■■ By points eighteen and nineteen the appellants contend the court erred in assuming appellees sustained physical pain and mental anguish. The testimony is undisputed they were injured on the occasion of the collision. From the nature of the collision, the time spent by appellees in the hospital, the numerous treatments by various doctors, the amount of sedatives and other medicines used, and the nature of the injuries sustained at the time of the collision, it may be implied that they suffered physical pain and mental anguish. Dallas Railway & Terminal Co. v. Enloe, Tex.Civ.App., 225 S.W.2d 431; Dallas Railway & Terminal Co. v. Davis, Tex. Civ.App., 26 S.W.2d 340.

No complaint is made to the form of the issue itself or the additional instructions.

■■■ Considering the issue and instructions and the record as a whole, we think reversible error was not committed by the court by failure to insert the words, "if any," in instruction (a).

After a careful study of the entire record, we are convinced that appellants have failed to show any error of such materiality as was calculated to cause and probably did cause the rendition of an improper judgment.

The judgment of the trial court is reformed to show the remittitur of $1,000 and, as reformed, is affirmed.