[No. 25269. Department One. May 31, 1935.]

F. W. MATHIAS, *Appellant,* v. CHARLES C. EICHELBERGER
*et al., Respondents.*

ALFRED H. McLEAN *et al., Appellants,* v. CHARLES C.
EICHELBERGER *et al., Respondents.*[1]

[1]Reported in 45 P. (2d) 619.

*F. W. Loomis,* for appellants.
*Shank, Belt & Rode,* for respondents.

GERAGHTY, J.—We have here, consolidated for purposes of trial and appeal, two cases growing out of one traffic accident; one case by appellant Mathias, owner and driver of an automobile, and the other by appellants McLean and wife, guest riders in the Mathias car. The jury returned verdicts in favor of the respondents, and this appeal follows.

The accident out of which the actions arose occurred at the intersection of Capitol way and Legion way in the city of Olympia. Capitol way runs north and south, is a heavily traveled arterial street, and part of Pacific highway. Legion way runs east and west, crosses Capitol way, and carries a heavy local traffic. West of Capitol way it had been designated as a one-way street by the city of Olympia, and posted with signs notifying the public of this fact. These signs were maintained on either side of the way at its intersection with Columbia street, one block west of Capitol way, and bore the words "One Way Street," and had painted on them arrows pointing westward. The one-way traffic permitted was westerly and on the north side of the way. A large arrow, twenty-seven feet long and twelve inches wide, pointing westward, was painted on the pavement of Legion way just east of Columbia street, to further challenge attention to the limited use of the street. There was some testimony to the effect that, while this arrow had been repainted in the summer preceding the accident, it had grown dim. As further indicating the one-way use of Legion way, cars were parked on both sides, heading diagonally westward into the curbs.

The evidence of the appellants and respondents was in marked conflict—a circumstance not unusual in traf-

fic accident cases. As presented to the jury, the appellants' case was that, on the day of the accident, Mathias drove his car to Olympia from Hoquiam, having as his guests in the rear seat the appellants McLean and wife. Another guest, Northrup, not a party to the actions, occupied the front seat with Mathias.

On entering the city, Mathias drove easterly on Fourth avenue, a part of the Olympic highway, until he reached Water street, two blocks west of Capitol way and one block west of Columbia street. At this point, he turned to his right and proceeded south to Legion way, then turned into that street and drove east across Columbia street to Capitol way. On approaching Capitol way, he stopped about four feet inside the curb line. He looked to the left (north) and saw a car coming south at an intersection one block away; looking to the right (south) he could see Capitol way in that direction for at least two-thirds of a block, and saw no car traveling north. He stopped at Capitol way because he knew it to be an arterial street, and believed, if there had been a truck in the block to his right at the time, he would have seen it.

Having stopped and looked in both directions, he proceeded across Capitol way, looking ahead for parking space in the block immediately beyond the intersection. He moved across the intersection at a speed of ten or twelve miles an hour. After he had gone so far across the intersection that he could look up the sidewalk on the east side of Capitol way, he was struck by the truck of the respondents and thrown against the building at the northeast corner of the intersection and approximately seventy feet from the point of impact. The truck was traveling at a speed of thirty miles an hour, or more, up to the time of the collision.

The intersection is obstructed, looking to the west, by a building at the southwest corner. The intersec-

tion is a busy one at all times throughout the day. While appellant Mathias had driven through Olympia for many years, he was not familiar with Legion way, did not know it was a one-way street, and neither he nor the other appellants saw the one-way signs.

The case made by respondents was to this effect: The truck was owned by respondents Eichelberger and Ryan and was driven by respondent Nylander at the time. He was driving north on Capitol way at the rate of fifteen miles an hour. As he neared the Legion way intersection, an automobile was approaching from the east. He slowed down to about ten miles an hour as he looked to see whether this car would stop. It did stop, and he made sure that no vehicle was coming south on Capitol way that might make a left-hand turn in front of him toward the east. He did not look to his left toward the entrance of Legion way, knowing it to be, in that direction, a one-way street closed to east-bound traffic.

He first saw the car in which the appellants were riding as it flashed in front of him. He struck the car toward the rear. After the collision, he was able to bring his truck to a standstill before its front wheels had arrived at the north curb line of the intersection. Bystanders testified that the Mathias car did not stop before entering Capitol way from the west, but entered the street at a speed of twenty-five or thirty miles an hour. Respondent Nylander had been traveling on Capitol way for several years, passing Legion way twice a day, and knew it to be a one-way street. The truck driven by him at the time of the accident was for transporting oil, was twenty-eight feet long, and empty at the time.

The *verdicts* indicate that the jury believed the evidence of respondents, rather than that of appellants. The verdicts are not to be disturbed unless error was

committed by the court in the conduct of the trial. The appellants contend that error was committed by the exclusion of evidence offered by them and in the giving and refusal of instructions.

The appellants offered to prove by the testimony of the city clerk of Olympia that, prior to the accident, there had been no proclamation or ordinance making Legion way a one-way street. The court excluded this testimony as being immaterial. The appellants also offered to prove by a city patrolman that, since he had been on the police force, he had driven past the one-way signs without seeing them, and had seen other cars go east on Legion way. This, also, was excluded.

We agree with the trial court that this testimony was immaterial. Whether or not Legion way was, by ordinance, made a one-way street, it was such in fact, and the signs posted and maintained challenged the public's attention to the fact. The way had been so marked for a considerable period of time before the collision, a fact known to the respondent driver of the truck.

"Travelers upon public highways are not expected to first ascertain and determine whether such signs are established in strict compliance with law, before respecting them.

"In *Lawe v. Seattle,* 163 Wash. 362, 1 P. (2d) 237, traffic on a certain street had been regulated to go one way, merely by directions spread out on the pavement in large letters 'One Way Traffic' with an arrow pointing contrary to the direction in which one of the drivers was proceeding. It was there held that the plaintiff was not guilty of negligence in assuming that the driver proceeding in the direction against the traffic sign would comply with the traffic signal." *Comfort v. Penner,* 166 Wash. 177, 6 P. (2d) 604.

That the patrolman himself had at some time in the past violated his own city's regulations, or had seen

others do so, could not affect the duty of the appellants to obey the directions of the municipal authorities. Furthermore, the respondents were not charged with knowledge of these violations, but, on the contrary, had a right to assume that the one-way direction would be enforced and obeyed.

The primary question was the negligence of the respondents in the operation of their truck at the intersection. The driver testified that, relying on the one-way traffic regulation, he did not look to his left on entering the intersection. That Legion way, west of Capitol way, was, in fact, a one-way street, was beyond question. The court properly held that the driver was justified in relying on this known fact, and was not negligent in failing to look toward Legion way, and so instructed the jury, as follows:

"You are instructed that the defendant A. W. Nylander in approaching the intersection of Capitol way and Legion way had a right to assume that no vehicles would be proceeding in an easterly direction out of Legion way, and had a right to rely upon such assumption until he saw, or, by the exercise of reasonable care should have seen, to the contrary."

Appellants criticize this instruction because it left out of consideration the question whether the signs were legible or whether a reasonably prudent person would have seen them, in the exercise of ordinary care. This instruction was given to advise the jury upon the duty of respondents, and had relation to the issue of their negligence only. Whatever excuse appellants had for not seeing the signs is beside the question, in so far as the negligence of the driver of the truck was concerned. He knew the signs were there and that the way was closed to east-bound traffic. He had a right to rely on this fact in crossing the intersection, until, as the court said in the instruction, "he saw, or, by

the exercise of reasonable care should have seen, to the contrary.''

Let us suppose that, on the morning of the day in question, and before the collision, someone had wantonly torn down the one-way signs in Legion way, so that, when appellants entered it from the west, there was nothing to indicate its character. Would this in any way affect the liability of the respondents if the driver of the truck did not know the fact? The appellants' objection to this instruction might have some force if the action were against them and they were seeking to exculpate themselves for failure to observe the signs. The rights of respondents in the operation of the truck across the intersection were not dependent upon the mental attitude, the eyesight, or the degree of care, of the appellants. It was sufficient for the respondent driver that the city, to his knowledge, had made and was enforcing the regulation.

The fundamental weakness in appellants' objection to this instruction, as well as in their complaint against the court's failure to give other instructions requested on the use of the one-way street, is the assumption that the respondents' duty and liability were dependent upon the manner in which the appellants used Legion way. The driver of the truck looked to the east and to the north and, assuming he would have the protection of the one-way regulation on the west, did not look in that direction. The one-way regulation was made to afford him this protection.

What we have said in relation to this instruction and the exclusion of the testimony of the city clerk and patrolman, disposes, we think, of the other instructions requested by the appellants. The appellants, at the beginning of the argument in their brief, express their view of the court's error as follows:

"The gist of the error of the trial court, as we see it, is that in framing and refusing instructions, he proceeded upon the theory that it was negligence *per se* for the plaintiffs, both driver and guests, to pass the one-way signs and without requiring the defendants to assume the burden raised by the pleadings and without any proof whatsoever that the signs existed in pursuance of any valid regulation or ordinance, and although plaintiffs offered to prove to the contrary and did prove that Legion Way was sometimes used as a two-way street, that plaintiffs were strangers in the locality, that the signs were dim and difficult to observe and were not seen by them, and that they had no knowledge thereof nor of the existence of Legion Way as a one-way street."

As we read the instructions, they studiously avoided charging the appellants with negligence in the use of the one-way street. The import of the instructions is that Legion way was a one-way street, and, being such, the respondents could not be charged with negligence because the driver of the truck, in reliance on this fact, known to him, did not look in that direction. The instructions had relation to the duty of the driver of the truck, rather than to that of the appellants. However free themselves of contributory negligence, the appellants could in no event recover against the respondents, unless the negligence of respondents was established. Whether they were negligent was dependent upon the duty of the driver to look to the left toward Legion way before entering the intersection. The law did not impose this duty upon him.

It would unnecessarily extend this opinion to discuss in detail the instructions requested by appellants and refused by the court, covering, as they do, thirty-three pages of the transcript. While the industry displayed in their preparation does credit to counsel, we feel that, if given, they would have tended to

confuse the minds of the jurors rather thàn aid them in reaching a correct verdict.

"It is the duty of the court to state the law to the jury as succinctly and directly as possible. This is best done by a few simple, direct, and plain statements which cover the issues rather than by a voluminous and lengthy dissertation upon the law involved, or, where the issues are not numerous or complicated, by numerous instructions." 2 Bancroft's Code Practice and Remedies, § 1474.

"The more simply and plainly instructions can be framed and cover the issues, the better the jury will understand them, and the less likely will they be to run counter to some rule of law." *In re Keithley's Estate,* 134 Cal. 9, 66 Pac. 5.

The instructions given to the jury by the trial court conformed to this standard. They were to the point and adequately dealt with the issues, which, after all, were not greatly involved.

█ Appellants complain of the court's refusal to give an instruction on the theory of the last clear chance. Respondent driver did not see appellants' car until it was immediately in front of him and too late to avoid the collision. The circumstances did not call for the requested instruction. *Braseth v. Farrell,* 176 Wash. 365, 29 P. (2d) 680.

The judgment is affirmed.

MILLARD, C. J., MAIN, TOLMAN, and BEALS, JJ., concur.