HEATHCO *v.* STATE EX REL. ADDISON.
WHITE *v.* STATE EX REL. SEARS.
RAMSEY *v.* STATE EX REL. WHITE.

[Nos. 26,509, 26,510 and 26,511. Filed January 15, 1936.
Rehearing denied March 23, 1936.]

*Ewing & Weaver, McClellan & McClellan* and *Alan W. Boyd,* for appellants.

*Newby & Newby, Ratliff & Ratliff* and *White & Haymond,* for appellees.

FANSLER, J.—These three cases are alike in all respects and present the same questions for decision. The actions are in *quo warranto,* seeking to procure for the relators possession of the offices of trustee for three of the wards of the town of Knightstown. Appellants were the incumbents of the three positions, holding by virtue of an election thereto at the general election of 1931, for what they claim was a term of four years, beginning in January, 1932. Appellees contend that the offices became vacant in January, 1934, and that they were entitled to fill the offices by virtue of their election thereto in November, 1933. There was a single trial of the three cases. The court found that the relators were duly elected to the

offices for a term of four years from the first Monday in January, 1934, and that appellants were usurpers, and there was judgment accordingly. Motions for a new trial upon the ground that the decision is not sustained by sufficient evidence and is contrary to law were overruled, and this ruling is the basis for the errors assigned.

The General Assembly in 1917 amended the statute regulating the government of towns, and provided that, among other officers, the town shall have a board of trustees, one trustee to be elected from each ward, to be voted on by all of the electors of the town, but that the trustee shall be a resident of the ward for which he is elected; that the term of the trustee shall be four years. There is a provision that at the November election in 1917, every town in this state shall elect a trustee from each ward to take office on the first Monday in January, 1918, and that in towns having an even number of trustees, half of the trustees elected receiving the highest number of votes at the 1917 election shall be regarded as elected for a period of four years, and the other half for a period of two years; and that in towns having an uneven number of trustees, the majority of the persons elected receiving the highest number of votes shall serve for four years and the minority for two years; and that thereafter the term of office for all trustees shall be four years. Section 11260, Burns' Ann. St. 1926.

In 1917 the town of Knightstown was made up of seven wards. It appears from the certificate of the board of canvassers that at the election in November, 1917, trustees were elected from wards 1, 2, 4, 5, and 7. It appears from the records of the meeting of the town board on January 7, 1918, that: "The clerk gave the Oath of Office to following new Trustees: Harry Steele, 1st ward for four years; J. B. Cress, 2nd ward for four yrs; W. P. Foulke, 4th ward for two years; William St. Clair, 5th ward for four years; James H. Rounds, 7th Ward for

two years. Two years term was to fill out the unexpired terms of Bunday & Lyons, who have resigned." But the statute, as amended in 1917, had expressly terminated the terms of all trustees theretofore elected as of noon on the first Monday of January, 1918. The officers of the town seem to have taken no cognizance whatever of this statute. The town clerk testified that there was no record of an election in 1919 in his office. In March, 1921, by resolution or ordinance of the board of trustees, the town was redistricted into five wards instead of the seven that had theretofore existed. It is obvious that in any election succeeding this redistricting it would be impossible to know which of the seven trustees were to hold over. None of them were elected for any ward as the wards were re-formed. It was the obvious purpose of the legislature that part of the board of town trustees was to be elected each two years, and that the trustees thereafter elected should serve four years, so that at no time would there be a board composed entirely of newly elected trustees. It therefore became necessary after the re-districting to elect five new trustees whose terms would be determined by the method described in the statute, the three receiving the highest vote to serve four years and the other two to serve two years, and by this procedure the beginning and end of the term of the trustee from each of the wards could be determined. But there is no evidence that an election was held in 1921, the evidence of the clerk being that he found nothing in the records to show who, if any one, was elected at that time. If there was an election in 1921, the date at which the term of the trustee for each ward would expire was determined by the number of votes cast for the respective candidates, and those terms could not thereafter be changed except by a further re-districting. If there was no election in 1921, and the evidence does not disclose that there was

not, the statute would require that the same procedure be followed in 1923.

There is in evidence the certificate of the election board showing that at the election in November, 1923, trustees were elected from the 1st, 2nd, 3rd, and 4th wards, from which it appears that the trustee from the second ward received the highest number of votes, the first ward the next highest, the third ward next, and the fourth ward the lowest number of votes. Why a trustee was not elected from the fifth ward does not appear. If there had been an election in 1921 there would have been but two vacancies and two trustees to elect in 1923, so thus far there is nothing in the evidence to definitely determine the date of the expiration of terms in the various wards. The town clerk testified that there was nothing in his records to show whether or not there was an election in 1925 or 1927. It appears from the certificate of one signing as inspector of election that at the election in 1929 five trustees were elected, one from each ward, to serve for a term of four years and until their successors are elected. It also appears from the certificate of the town clerk that the trustees from the 4th and 5th wards were elected for a period of two years. But the certificates of the election officers are not controlling. If there was a vacancy for a term unexpired they were elected for the remainder of the term, and if there was a vacancy because of the expiration of a term they were elected for a full term. This is fixed by the law and cannot be influenced by the decision of election officers. *Parmater* v. *State ex rel. Drake* (1885), 102 Ind. 90, 3 N. E. 382; *Parcel* v. *State ex rel. Lowrey* (1887), 110 Ind. 122, 11 N. E. 4. At the November election in 1931 five trustees were voted for. There were contests involving the election of three of the trustees, and the record of the proceedings

of the town board as of January 4, 1932, recites that the five old trustees had finished their terms and that the new board consisting of five, including appellants, was placed in charge. From a return of the election board, it appears that five trustees, one from each ward, among whom are the relators, were elected in November, 1933.

It is impossible to know from the evidence when the terms of the trustees from the various wards began and terminated. The statute commands that they shall not all terminate at the same time, and the town officers cannot, by failing to hold elections, or by holding them in some manner not contemplated by the statute, defeat the will of the legislature. *Parmater* v. *State ex rel. Drake, supra; Parcel* v. *State ex rel. Lowrey, supra.*

It is elementary that, to prevail, in an action in *quo warranto*, seeking possession of an office, the relator must establish his right to the office, and that he cannot recover upon the weakness of the title of his adversary. It clearly appears from the evidence that each of the relators received the highest number of votes for the office for which he was a candidate and was certified as elected by the proper officers. But it was also necessary to show that there were vacancies in the offices to which they were elected, or that the terms of the incumbents had expired. There is nothing in the evidence to show when the terms of the trustees for the various wards expired.

Appellees say that the Act of 1917 endeavors to devise a plan whereby a member of the board of trustees will be elected every two years, but that the act makes no provision for exigencies and does not take into account that, by reason of vacancies, "the whole order and intent of the 1917 Acts may be changed in 1918, or any succeeding year." But we cannot agree with this view. The offices of the town were

created by the legislature, and the legislative intent cannot be changed by the will, or act, or omission of the town officers, or any of them. It is appellees' contention that the five trustees elected in 1929 were all entitled to serve for a term of four years from the first Monday in January, 1930, notwithstanding the express and recognized intention of the legislature to the contrary. The cases above referred to sustain the contrary view.

Some evidence was introduced upon the question of whether or not appellants had filed expense accounts as required by the Corrupt Practice Act, as a condition precedent to their right to receive certificates of election and to hold office. There is no evidence that they did not file expense accounts. There is some evidence that no such statements are now on file, which was explained by the county clerk upon the theory that election papers were destroyed after six months. Each appellant testified that, as he remembered, a statement had been filed. There is nothing in the evidence which would sustain the court in finding that expense accounts had not been filed by appellants. It must be presumed, in the absence of a showing to the contrary, that the clerk required the filing of the expense accounts before issuing appellants' certificates of election, as the statute required that he should do.

Appellees cite the case of *Seitz* v. *Mosier et al.* (1922), 192 Ind. 416, 136 N. E. 840, but it does not support appellees' position. We quote from that case: "No election having been held in 1917, and appellant being one of the three who received the highest vote at the election in 1919, no cause is shown for excluding him from office until he shall have served his full term of four years. No question is before the court as to the length of term for which any other trustees than appellant were elected in 1919, and as to them we decide

nothing." But it is apparent that, to be consistent, having held that in the absence of an election in 1917 the trustees receiving the highest votes in the election of 1919 were elected for a full term of four years from the following January, we must hold that those receiving the lesser votes should hold but for two years. Evidence may be available to show that there was an election in 1921 and what trustees received the larger votes, or that there was no election in 1921, and to show who received the larger votes in 1923. These facts would fix the term for the office of trustee from each ward. It may be that appellants were elected at a time when there were no vacancies, and were permitted by the then incumbents to take possession of the offices for the last two years of a term. Their predecessors, who had served two years, might have been elected to finish an unexpired term, and the incumbents may have been elected and may have taken office at the beginning of a regular four-year term. We cannot say from the evidence, and neither could the trial court. Appellees point to section 11263, Burns' Ann. St. 1926, §48-118, Burns 1933, which provides that where there is a vacancy in the board of trustees it shall be filled by appointment by the board, but that such appointments shall not extend beyond the first Monday of January following the next regular election. But in such cases, if the vacancy occurs during the first two years of the four-year term, a trustee is elected at the next election for the last two years of the unexpired term. Section 49-409, Burns' Ann. St. 1933.

The finding and judgment of the court are contrary to law and not sustained by the evidence.

Judgment reversed, with instructions to sustain appellants' motions for a new trial.