ESTELLA GEISKING, appellant, v. ERLING KEITH SHEIMO, appellee.

No. 50066.

(Reported in 105 N.W.2d 599)

OCTOBER 18, 1960.

Brown, Dresser & Kinsey, of Mason City, for appellant.

Boyle & Schuler, of Clear Lake, for appellee.

THOMPSON, J.—The matter before us arises solely upon the pleadings. Plaintiff's petition alleges that on March 10, 1958, about 9 a.m., she was driving an automobile south on a farm-to-market road in Hancock County. The defendant was driving his automobile east on an intersecting farm-to-market road. As defendant approached the intersection he was faced by a traffic sign which read "Yield Right of Way", which sign was intended to apply to vehicles approaching this intersection from the west. Defendant intended to make a left turn at the intersection, and as he approached he slowed his speed to a rate suitable for a left turn or "suitable for preparing to stop and to yield the right

of way." There was no obstruction to the view and each vehicle was in plain sight of the driver of the other. Plaintiff reasonably believed that defendant observed her automobile and the "Yield" sign and was yielding the right of way to her. Defendant did not stop or yield, however, but both vehicles proceeded into the intersection and a collision occurred. Allegations of specific negligence charged against the defendant and specifications of plaintiff's damages are not material to this appeal.

The defendant attacked the petition by a motion for judgment on the pleadings. Summarized, the motion is based upon the thought that the defendant had the directional right of way under section 321.319, Code of 1958; there was no obstruction to the view, and plaintiff admits she saw defendant as the vehicles approached the intersection; the "Yield" sign was not an authorized traffic-control device and so was of no legal significance, defendant was not bound to observe it and plaintiff had no right to rely upon it as giving her the right of way in opposition to the directional right-of-way statute, section 321.319, supra. It is the apparent sense of the motion for judgment that plaintiff was on the face of her petition guilty of contributory negligence as a matter of law. The trial court so held, and granted the motion. From the judgment so entered we have this appeal.

I. Defendant's contention is that section 321.252 of the Code requires the State Highway Commission to adopt a manual and specifications for a uniform system of traffic-control devices for highways, and that the commission did adopt such a manual which was in effect on March 10, 1958, which contained no provision or authorization for "Yield" signs. Code section 321.236, in effect on March 10, 1958, authorized local authorities to designate stop intersections but there is no provision therein for "Yield" signs. This statute was amended, effective July 4, 1959, to authorize "Yield" signs, but there was no such authority on the date of the accident. Section 321.255 provides that all local control-traffic devices shall conform to the state manual and specifications required by section 321.252, supra; and section 321.259 provides that no unauthorized signs shall be placed on any highway, and such signs are declared to be public nuisances.

So defendant and the trial court regard the "Yield Right of Way" sign which faced the defendant at the intersection as unauthorized and so having no meaning whatever, and in no manner protecting the plaintiff from the charge of contributory negligence as a matter of law in failing to yield the directional right of way.

It seems to have been assumed that the questioned sign was erected by authority of the Board of Supervisors of Hancock County, and we shall make the same assumption. The trial court said it would take judicial notice of the adoption of a manual by the State Highway Commission, and of its contents, at least to the extent that it contained no provision for "Yield" signs on the date of the collision. While we might have some doubt that judicial notice goes so far, the question is not raised by the appellant and we have no occasion to decide it. We shall consider the manual as did the able trial court.

II. We start, therefore, with the assumption that the sign was unauthorized, although we do not so decide, since its legality is not determinative in our view of the case. But we are unable to agree that it had no legal significance whatever when the question of the contributory negligence of the plaintiff is to be determined. Taking her petition at its face value, she knew of the sign, saw the defendant slow his speed as if to obey its mandate, and relied upon both the sign and the defendant's action. We have so often said that generally the question of contributory negligence is for the jury that repetition of authority is needless. It may be that if the sign had not been there, and if defendant had not given evidence of obeying it or of waiving his right of way, a holding that plaintiff was so plainly contributorily negligent that the court should so hold as a legal question would be appropriate. We do not decide that point. There is considerable authority on the amount of reliance which may be placed on an unauthorized traffic sign; and for the purposes of this discussion we shall consider the sign in question as being in that category. However, the driver of a motor vehicle has the right to assume that an apparently regular traffic sign was placed by legal authority, and to act accordingly, in the absence of knowledge to the contrary. In Rogers v. Jefferson,

223 Iowa 718, 721, 272 N.W. 532, 534, we said: "In any event, we think that appellee's son was warranted in assuming that the 'SLOW' sign * * * was placed there by proper authority, and that he was entitled to take it into consideration in determining his movement toward the intersection." To the same effect are Rogers v. Jefferson, 224 Iowa 324, 333, 275 N.W. 874, 880, and King v. Gold, 224 Iowa 890, 895, 276 N.W. 774, 776.

But the great weight of authority is that even an unauthorized sign is not meaningless when questions of negligence are under consideration. We agree with the rule stated in 164 A.L.R., at page 216, under the heading "Anno.—Traffic Control at Street Intersection." It is there said:

"Furthermore, many courts take the view that even if it is shown that the traffic signal involved was not properly authorized, it is still effective to control the question of the negligence or contributory negligence of a pedestrian or vehicle driver who disregards it, at least to the extent that such disregard may be taken into consideration by the trier of the facts as one of the circumstances to be passed upon in determining the question of a violator's negligence or contributory negligence." Numerous authorities are cited in support.

In Clinkscales v. Carver, 22 Cal.2d 72, 136 P.2d 777, the California Supreme Court upheld an instruction telling the jury it was negligence as a matter of law to disregard the sign. The court said at page 76 of 22 Cal.2d, page 778 of 136 P.2d: "Failure to observe a stop-sign is unreasonably dangerous conduct whether or not the driver is immune from criminal prosecution because of some irregularity in the erection of the stop-sign."

Pertinent language was used by the Washington Supreme Court in Comfort v. Penner, 166 Wash. 177, 183, 6 P.2d 604, 606: "Presumably, it [a stop sign] was erected and maintained by legally constituted authority; but whether so or not is of no particular moment, as it was at least a de facto warning sign. Whether it was a de jure warning sign or not is not necessary to determine. It was maintained for the safety of traffic. Travelers upon public highways are not expected to first ascertain and determine whether such signs are established in strict compliance with law before respecting them."

To the same effect are Legere v. Buinicky, 93 N. H. 71, 35 A.2d 508; Nelson v. Dennis, 38 Manitoba L.R. 553, 16 B.R.C. 214, 3 D.L.R. 215; General Exchange Insurance Corp. v. Carp, La. App., 176 So. 145; Schwartz v. Lindquist, 251 Ill. App. 320; and Cook v. Hunter, 52 Ohio App. 354, 3 N.E.2d 680.

An interesting observation arises in connection with the cited case of Cook v. Hunter, supra. The authorities cited and relied upon by the trial court and the defendant to show that an unauthorized sign has no legal meaning whatever are Fred W. Albrecht Grocery Co. v. Overfield, 32 Ohio App. 512, 168 N.E. 386, and Hoover v. Blackmore, Municipal Court of Dayton, Ohio, 87 N.E.2d 477. The Albrecht case contains these words: "Signs so erected [without authorization] do not have any legal effect whatever, and no one is required to pay any attention to them." Page 518 of 32 Ohio App., page 388 of 168 N.E. Without doubt this supports defendant's position; but the holding was expressly overruled by the same intermediate court in Cook v. Hunter, supra, 52 Ohio App. 354, 357, 3 N.E.2d 680, 682. It was there said that the language quoted last above was "unfortunate" and it was expressly disapproved.

Hoover v. Blackmore, supra, cited by both the trial court and the defendant, seems expressly opposed to their position. It is in accord with the general line of authority cited above. After pointing out that the Albrecht case was specifically overruled in Cook v. Hunter, supra, Hoover v. Blackmore says: "Unauthorized 'courtesy' traffic controls, if clearly visible, require operators of vehicles to take such factor into consideration in exercising ordinary care under the circumstances." It is also said "* * * the presence of an unauthorized sign is material on the question of negligence or contributory negligence * * *." Page 480 of 87 N.E.2d.

Our directional right-of-way statute, section 321.319, has meaning and failure to observe it may be negligence as a matter of law. Jacobson v. Aldrich, 246 Iowa 1160, 68 N.W.2d 733. But it must be considered in the light of all surrounding circumstances, and compliance may be excused. Culbertson v. Anderson, 251 Iowa 265, 100 N.W.2d 633. And the right of way may be waived by the party entitled to it. Arenson v. Butter-

worth, 243 Iowa 880, 884, 885, 54 N.W.2d 557, 560. So the statute is not at all times and in all situations to be considered a hard and fast rule without exceptions. We think the situation here comes within one of these.

The plaintiff had the right to assume the sign was authorized and to suppose that the defendant would obey the law, in the absence of circumstances which would put a reasonably prudent person on notice that such assumptions were unwarranted. We have many times so held. In considering her contributory negligence or absence thereof, we must consider that she had a right to assume the authority of the "Yield" sign as we have pointed out; there is nothing in the record to show she had any actual knowledge it was unauthorized; and travelers on our highways can hardly be expected to have information whether the traffic signs which confront them so frequently are placed there by proper authority. Reasonable prudence dictates they give such signs due heed without pausing to inquire whether because of some technicality they may not be entirely legal. By the same token, they are entitled to rely upon the assumption that others using the highways will follow the same rule; and so relying, they cannot be charged with contributory negligence as a matter of law. Plaintiff's position is strengthened by the allegation that the defendant slowed his speed and gave some indication of an intent to obey the sign; but even without that, she cannot be found contributorily negligent so as to preclude a jury determination merely because a traffic sign upon which she relied proved to be unauthorized, even if such lack of authority eventually be established. The test here is, of course, whether if upon the trial the plaintiff introduces substantial competent evidence of the matters pleaded she would be entitled to have the matter submitted to the jury. We think she would.

The cause is remanded with directions to deny defendant's motion for judgment, and for further proceedings in line with this opinion.—Reversed and remanded.

All JUSTICES concur.