[No. 37784.   Department Two.   June 9, 1966.]

MORRIS MAZON, *Individually and as Guardian, Respondent,* v. HARRY DRUXMAN *et al., Appellants.**

*Reported in 415 P.2d 86.

*Bateman, Reed, McClure & Moceri,* by *Roy J. Moceri,* for appellants.

*Murray, Dunham & Waitt,* by *Wayne Murray,* for respondent.

WEAVER, J.—Defendants appeal from a $28,000 judgment entered after a jury verdict in favor of plaintiff for general and special damages for personal injuries. Plaintiff was injured while riding as a guest passenger in an automobile owned by defendant-parents and driven by their 16-year-old son, Barry A. Druxman. The family-car doctrine is not involved, so we refer to Barry as defendant. Plaintiff, a minor just under 15, appears by her guardian ad litem.

May 1, 1963, Barry borrowed his father's automobile, drove to Edmond Meany Junior High School in Seattle, and met plaintiff to drive her home. They drove to the Arboretum and entered the south (Madison Street) entrance. They eventually drove north on Arboretum Drive East, which commences at Lake Washington Boulevard about two blocks inside the Arboretum, extends generally north and south, and terminates at Foster Island Road, which point is referred to as the Broadmoor, or north entrance. Arboretum Drive East is a winding, blacktop, 2-lane road, 18 feet wide without a center line.

Defendant parked the automobile in one of the several roadside turnouts in the Arboretum. Plaintiff and defendant were parked 35 to 40 minutes when a quarrel ensued. The reason for the quarrel is not germane to this opinion.

There is evidence (which the jury was entitled to believe): that defendant became angry;[1] that he quickly backed the car out of the roadside turnout, skidded or burned the tires, and then went "awfully fast."[2]

---

[1] Defendant testified as follows: "Q. You feel this argument caused you to drive faster than you might otherwise have done? A. I believe so."

[2] In final argument, defendant's counsel, contending that defendant's actions were only negligent and not grossly negligent, stated: "I think he was driving too fast for the road conditions . . . . *He was driving above the speed limit* . . . . If there was a simple negligence we wouldn't be here, because I agree he was driving too fast." (Italics ours.)

Approximately 110 to 120 yards from the turnout, defendant failed to negotiate a curve. Defendant's car was either driven or skidded into the oncoming southbound lane where it collided with an automobile driven by Eugene Goforth. Defendant admits that he was driving partially on Mr. Goforth's side of the road at the time of the accident. Photographs of the automobiles taken after the accident indicate that the impact was at least a near head-on collision. The evidence of defendant's speed varies from his own estimate of 20 miles per hour to 40 to 50 miles per hour.

One of the two major questions presented by defendant's assignments of error is the legal speed limit in the Arboretum on the day of the accident.

▇ Defendant assigns error to the court's admission of two large photographs of the scene of the accident. They were taken at different distances but in the same direction. Both show the same sign designating the speed limit to be 15 miles per hour. It is admitted, and the jury was informed, that the signs had been installed *after* the accident. Since both photographs illustrate substantially the same scene, the court's admission of one of the photographs "for the purpose of showing the scene and the terrain, *not the sign*" (italics ours) was sufficient. The jury was adequately informed that the speed limit signs were not present on the day of the accident. The jury was not misled.

Next, defendant assigns error: (a) to the court's refusal to strike all evidence relating to the speed limit of 15 miles per hour in the Arboretum; (b) to the court's instruction that the "maximum lawful speed at the place here in question was 15 miles per hour"; and (c) to the court's refusal to give a requested instruction that the maximum lawful speed was 25 miles per hour. It is defendant's contention that he would not have been found grossly negligent had the jury been instructed that the speed limit was 25 miles per hour.

Defendant's argument is this: RCW 46.48.020(1) fixes the basic speed limit within an incorporated city at 25 miles per hour. At the time of the accident, in order to reduce the speed limit the governing body of a municipality had to

(1) adopt an order, rule or regulation changing the speed limit; and (2) post signs of the new speed limit at both ends of the street being regulated.

Both counsel admit that they have been unable to find an order, rule or regulation changing the speed limit in the Arboretum. Upon this procedural void, defendant bases his argument that the maximum speed limit was 25 miles per hour. We are not so persuaded.

■ The evidence is conflicting as to whether there was a 15-mile-per-hour sign at the south (Madison Street) entrance, or at the south end of Arboretum Drive East. It is undisputed, however, that there was a 15-mile-per-hour sign at the north entrance (Broadmoor) to the Arboretum, approximately 2000 feet north of the scene of the accident. Defendant Barry Druxman testified that *he knew of the presence of the 15-mile-per-hour speed limit sign at the Broadmoor entrance.*

In *Comfort v. Penner,* 166 Wash. 177, 6 P.2d 604 (1932), a stop sign had been maintained for two years and one of the litigants drove his car through the intersection without stopping. This court, in holding that it was immaterial whether or not the stop sign had been legally erected, stated:

Presumably, it [the stop sign] was erected and maintained by legally constituted authority; but whether so or not, is of no particular moment, as it was at least a *de facto* warning sign. Whether it was a *de jure* warning sign or not, is not necessary to determine. It was maintained for the safety of traffic. Travelers upon public highways are not expected to first ascertain and determine whether such signs are established in strict compliance with law. before respecting them.

See also *Wood v. Chicago, M., St. P. & Pac. R.R.,* 45 Wn.2d 601, 277 P.2d 345 (1954).

The same reasoning was used in *Mathias v. Eichelberger,* 182 Wash. 185, 45 P.2d 619 (1935), and *Warner v. Ambrose,* 53 Wn.2d 231, 332 P.2d 941 (1958). In fact, many courts take the view that even if it is shown that the traffic signal was not properly authorized, it is still effective to control

the question of the negligence or contributory negligence of a vehicle driver who disregards it. Annotation: Auto accident—Stop Signal or Sign, by C. C. Marvel. 3 A.L.R. 3d 180, 290 (1965).

We are aware that the cited cases involve traffic signs which have been approached by the driver; but we deem defendant's admitted knowledge that at least the north entrance of the Arboretum was posted at 15 miles per hour sufficient to justify the court's instruction. It is immaterial whether the sign be de facto or de jure. It was not error to deny defendant's motion for a new trial upon his claimed assignments of error.

Finally, defendant contends that the court erred when it refused to reduce the $28,000 verdict to $22,000. We do not agree.

Defendant's contention arises from the following: The original complaint prayed for $22,000 general and $2,000 special damages. It is admitted that plaintiff's counsel served and filed a notice of proposed trial amendment in which defense counsel was advised that a motion would be made to amend the complaint to increase the claim for general damages to $30,000 and to increase the claim for special damages to $5,000. The trial amendment was not presented to the trial judge, although at the argument on motion for a new trial or to reduce the verdict, he remarked that he had read the proposed trial amendment but had forgotten about it.

The court's instructions do not inform the jury of the *amount* claimed by plaintiff. Instruction No. 11 was the only one given on damages:

> In the event you find for the plaintiff, you may consider the following in determining the amount of damages you will award:
> 1. Medical expenses incurred to date and to be incurred in the future;
> 2. Pain, suffering, disfigurement and disability;
> The law has not furnished us with any fixed standard by which to measure pain, suffering, disfigurement or disability.

With reference to these matters, you must be governed by your own judgment and by the evidence in the case.

■ No exception was taken and no error was assigned to the instruction; nor did defendant propose a corrective instruction. Hence, the instruction became the law of the case. *Schneider v. Noel,* 23 Wn.2d 388, 160 P.2d 1002 (1945), and authorities cited.

■ Further, in oral argument plaintiff's counsel apparently used a blackboard on which he detailed and totaled the damages claimed to be $32,782.05. On at least two occasions he referred to $30,000 general and $2,782.05 special damages. No objection was made to the argument.

Both counsel and the court operated on the belief that the pleadings had been amended. No exception having been taken to instruction No. 11 and no objection having been made to the oral argument, the amount of the verdict need not be reduced.

The judgment is affirmed.

ROSELLINI, C. J., DONWORTH, FINLEY, and HAMILTON, JJ., concur.