DAWN MICHELLE ENYART, BY HER NEXT FRIEND, WILLIAM FREDERICK ENYART *v.* KLINE BLACKETOR, JR.

[No. 3-1273A162. Filed February 27, 1976. Rehearing denied April 19, 1976. Transfer denied September 13, 1976.]

*Herbert D. Rollo, Bangs & Rollo*, of Huntington, *Charles R. Tiede, Plummer, Tiede, Magley & Metz*, of Wabash, for appellants.

*Herbert H. Bent, Rockhill, Kennedy, Pinnick, Sand & Bent*, of Warsaw, *Robert E. Peterson*, of Rochester, for appellee.

HOFFMAN, J. — Plaintiffs-appellants Dawn M. Enyart (Dawn) and her parents, William F. and Patricia M. Enyart (the Enyarts) commenced separate actions in the trial court, which were consolidated prior to trial, seeking damages for injuries sustained when Dawn's bicycle collided with a vehicle driven by defendant-appellee Kline Blacketor, Jr. Trial was had before a jury, which returned a verdict in favor of Blacketor. Judgment was entered thereon, and this appeal was perfected.

The first issue presented on appeal is whether the trial court erred in granting a motion in limine filed by Blacketor, and in entering an order proscribing any reference during the trial to a 20 mile per hour speed limit sign which was posted near the accident scene. Blacketor's motion in limine asserted that the legal speed limit at the collision scene was not 20 miles per hour, and that the Enyarts intended to show the existence of the sign at trial, to his prejudice.

Blacketor's ground for the asserted illegality of the speed limit sign was that the City of Rochester, which had jurisdiction over the collision scene, had not acted pursuant to State statute so as to alter the speed limit from the general speed limit of 30 miles per hour prescribed by statute for such urban areas. The Enyarts, however, contended in the trial court and on appeal that such speed limit had been duly altered to 20 miles per hour under the authority of an ordinance of the City of Rochester in effect at the time of the collision here at issue.

The parties do not dispute that the general speed limit applicable to the street when this mishap occurred was 30 miles per hour under the provisions of IC 1971, 9-4-1-57(b)

(1) (Burns Code Ed.). Both parties also recognized that IC 1971, 9-4-1-58 (Burns Code Ed.), enabled "local authorities" to decrease such speed limit within the "urban districts" covered by IC 1971, 9-4-1-57(b) (1), *supra*, to not less than 20 miles per hour where the general speed limit had been determined to be greater than what was reasonable and safe on the basis of an engineering and traffic investigation. The dispute as to this issue thus centers about the aforementioned Rochester City Ordinance, which the appellants assert authorized a 20 mile per hour speed limit at the collision scene.

The appellants had the burden of proving the facts upon which they base their claim of negligence. In the case at bar, the maximum legal speed at the accident scene was placed in issue by the pleadings. Where a claim or a portion thereof is based on a municipal ordinance, the burden is upon the party asserting such claim to establish the existence of such ordinance, since the courts of this State do not take judicial notice of such ordinances. *See, Matter of Public Law No. 305 and Public Law No. 309* (1975), 263 Ind. 506, 334 N.E.2d 659, 662, and cases cited therein. Thus, in the case at bar, the appellants had the further burden of showing the existence of a city ordinance setting the speed limit which they alleged Blacketor had negligently violated. In response to such burden, appellants asserted the existence of the Rochester City Ordinance mentioned hereinabove.

The portions of such ordinance which have been made a part of the record of this cause enable the Chief of Police of the City of Rochester to "determine the installation and proper timing and maintenance of traffic-control devices" such as signs, and to make "temporary or experimental regulations to cover emergencies or special conditions." The Chief of Police is also empowered to conduct studies related to traffic engineering and planning.

Appellants' exact assertion with regard to this ordinance is that because there is a presumption that public officials act

in conformity with the law, it must be presumed that the speed limit sign here at issue was posted by the Chief of Police in the exercise of his powers to erect signs and make traffic regulations under the foregoing ordinance. Therefore, because they had established such ordinance as a legal basis for such sign, appellants contend, the trial court erroneously placed upon them the burden of showing another city ordinance altering such speed limit as a precondition to the admission of evidence showing the existence of the sign.

However, even assuming *arguendo* that such ordinance could have properly authorized an alteration of the general speed limit under State law, appellants have at no time shown or offered to show that this speed limit sign was put in place by an order of the Chief of Police. While it may be presumed that such a public official acts in conformity with the law,[1] there is no basis in law or reason for a presumption in the case at bar that the Chief of Police acted to cause the placement of this sign. Because appellants have never shown or offered to show the facts necessary to come within the terms of the aforementioned ordinance, the trial court properly placed upon them the burden of showing that a 20 mile per hour speed limit had been set at the accident scene by authority of some other ordinance enacted pursuant to IC 1971, 9-4-1-58, *supra*. Moreover, because the appellants thereafter failed to show the existence of any proper authority for a deviation in the speed limit at the collision scene from the general speed limit statute, any evidence which the appellants would have introduced tending to establish such a speed limit as the legal speed limit in the eyes of the jury would have been irrelevant and prejudicial, and properly excludable through an order in limine. *See, Burrus* v. *Silhavy* (1973), 155 Ind. App. 558, 293 N.E.2d 794. It must be concluded that the trial court did not err in proscribing any reference at trial

1. *Heathco* v. *State ex rel. Addison* (1936), 209 Ind. 667, 199 N.E. 260.

to the disputed speed limit sign following appellants' failure to carry their burden of showing an applicable ordinance validating such sign.

Appellants' next contention is that even if they failed to establish the validity of such sign, still evidence of its existence and the defendant's disregard of its apparent mandate should have been presented at trial for the jury to consider as some evidence of his negligence. Appellants support this contention through the citation of cases involving the disregard of irregularly posted traffic control devices, most notably including *Geisking* v. *Sheimo* (1960), 252 Iowa 37, 105 N.W. 2d 599, 2 A.L.R.3d 268.

Appellants, at page 19 of their brief, succinctly state their position as follows:

> "The Court's order limiting the evidence as to the existence of the speed signs without first proving the signs were authorized by specific ordinance, etc. was clearly a ruling by the Court as to the fact that if a speed sign was an unauthorized sign, it would not be negligence per se to violate the regulation."

The assertion that the violation of an illegal speed limit sign is evidence of negligence is supported by appellants with the following quotation from *Geisking* v. *Sheimo, supra,* at 41 of 252 Iowa, at 601 of 105 N.W.2d, at 272-73 of 2 A.L.R. 3d:

> "[T]he great weight of authority is that even an unauthorized sign is not meaningless when questions of negligence are under consideration. We agree with the rule stated in 164 ALR, at page 216, under the heading 'Anno-Traffic Control at Street Intersection'. It is there said: 'Furthermore, many courts take the view that even if it is shown that the traffic signal involved was not properly authorized, it is still effective to control the question of the negligence or contributory negligence of a pedestrian or vehicle driver who disregards it, at least to the extent that such disregard may be taken into consideration by the trier of the facts as one of the circumstances to be passed upon in determining the question of a violator's negligence or contributory negligence.'"

However, appellants' reliance on *Geisking* v. *Sheimo, supra,* and the cases cited therein, is misplaced. As pointed out by appellee Blacketor, a fundamental difference exists between cases such as *Geisking* v. *Sheimo, supra,* and the case at bar. In the former class of cases, a defendant's disregard of an irregularly posted traffic control device which gives notice of the existence of a hazardous situation is considered to be some evidence of his negligence. However, in the instant case, it cannot be said that the speed limit sign gave Blacketor any notice of any hazard, so as to render his asserted disregard of it a disregard of known hazardous consequences.

A careful study of *Geisking* v. *Sheimo, supra,* and the cases cited therein, discloses that the warning or notice aspect of such irregular traffic control devices was considered by those courts to be dispositive of the issue of whether a disregard of them was evidence of negligence. For example, the following language is found in *Cook* v. *Hunter* (1935), 52 Ohio App. 354, 3 N.E.2d 680, at 682:

"It has always been permissible to show all the conditions, facts, and circumstances surrounding the location of a collision of this character, in determining whether the respective parties, in view of these conditions, facts and circumstances, acted as ordinarily prudent persons would act under like conditions, facts, and circumstances, and were therefore guilty of negligence or contributory negligence, directly and proximately producing the collision and injury, although a criminal conviction could not be based upon a failure to observe a stop sign or traffic light not erected and maintained by authority of law. The *warning effect* of the traffic signal erected at the intersection of the roads where the collision occurred, which gives rise to the instant action, was in no way lessened or increased by the obtaining or failing to obtain the consent and approval of the highway director to erect and maintain the same." (Emphasis supplied.)

Similarly, *see, Devine* v. *Grace Construction and Supply Co.* (1962), 243 Ind. 98, 181 N.E.2d 862. In short, the rule has developed that the violation or disregard of an irregularly

posted traffic control device is some evidence of a driver's negligence or contributory negligence where the device in question gives notice or warning of a specific hazard such as a curve or road defect, or of an upcoming area of known hazard, such as a school or intersection. *Cf:* Annot. 3 A.L.R. 3d 557 (1965); Annot. 2 A.L.R. 3d 275 (1965); Annot. 164 A.L.R., § IVc., at 212 (1946).

However, an irregularly posted speed limit sign does not come within the foregoing rule for the reason that such a sign ordinarily gives no notice or warning of any immediate danger or hazard which should be considered by a driver in the exercise of due care. The speed limit set by such a sign is no more than the opinion of some undisclosed individual as to the appropriate speed limit for the highway or street where it is posted. As such, evidence of its violation is of little probative value in determining a defendant's negligence or contributory negligence, and what value there is in such evidence is far outweighed by the prejudice which would undoubtedly result from placing before a jury evidence of an apparent speeding violation by a defendant in a case such as the one at bar.

It should be stated, in passing, that the view which this court has taken of this issue does not preclude a plaintiff in such a case from introducing any evidence of the defendant's speed. As in all other cases, the plaintiff may introduce evidence that the defendant was operating his vehicle at a speed greater than that which was reasonable and prudent under the then existing circumstances and road conditions. *See,* IC 1971, 9-4-1-57(a) (Burns Code Ed.). The trial court correctly held that the evidence offered by appellants regarding the irregularly posted speed limit sign should not be admitted upon the facts in this case.[2]

2. The dissenting opinion states in Note 3 that the rationale of this opinion is that "signs erected without statutory compliance have no legal effect whatever, and no one is required to pay any attention to such signs." Our position can be more correctly summarized as being that such signs are without legal effect, except that they may be used to

The next issue which must be considered herein is whether the trial court erred in limiting the appellants' cross-examination of a witness. Defendant-appellee Blacketor introduced into evidence a diagram which had been drawn by such witness, depicting the physical objects and topography in the vicinity of the accident scene on a date subsequent to the accident. Such diagram is approximately two feet by six feet in size and at one point bears the legend "20 mph" in miniscule hand printing. It was admitted without objection and displayed at some distance from the jury.

Although it was never mentioned on direct examination, appellants sought to cross-examine the witness who prepared such exhibit as to the meaning of such "20 mph" symbol. The trial court refused to allow any such cross-examination and, out of the presence of the jury, ordered such symbol covered upon motion of appellants.

The facts relevant to this issue reveal that the trial court's refusal of cross-examination as to the "20 mph" symbol and its deletion of such symbol immediately after its presence was made known were no more than rulings in furtherance of the trial court's order in limine, which we have heretofore held to be proper. Furthermore, the symbol which is the subject of this dispute was never mentioned during direct examination, and appellants have not established, nor do we believe, that the jury was ever aware of its existence. Moreover, even if one or more members of the jury did become aware of such symbol, in light of appellants consistent efforts to have the existence of such sign revealed to the jury, such a revelation could only have been beneficial to their cause.

---

show that an allegedly negligent driver had some reasonably specific notice of a hazard, which he should have considered in the exercise of reasonable care. Further, for the reasons herein stated, such signs should not be utilized as the basis for an inference that a driver's speed was excessive; such an inference should be based either upon a valid legislative enactment, or proof that such driver's speed was excessive under the then existing road conditions.

Appellants next contend that the following question and answer during the direct examination of Blacketor was erroneously admitted in evidence over their objection:

"Q. In your opinion, Mr. Blacketor, was there anything you could have done to have avoided that accident?

"MR. TIEDE: I am going to object to that, Your Honor, for the reason it called for a conclusion which is the province of the Jury to draw from all the evidence.

"MR. Bent: This is prefectly proper.

"THE COURT: The objection is overruled.

\* \* \*

"A. There was not."

However, as pointed out by appellee, the substance of such opinion testimony had been previously admitted without objection during such direct examination of Blacketor:

"Q. Did you honk your horn before collision?

"A. I did not have time.

"Q. Did you veer your car from either—either to the right or left?

"A. No.

"Q. Why not?

"A. There was not time."

Furthermore, the rule of law upon which appellants relied in making their objection has recently been re-examined by this court. In *Reith-Riley Construction Company, Inc.* v. *McCarrell* (1975), 163 Ind. App. 613, 325 N.E.2d 844, Judge Lybrook, speaking for this court, held the former rule requiring a *per se* exclusion of lay opinion testimony upon the ultimate questions to be decided by the jury to be unduly restrictive and, at 852-53 of 325 N.E.2d, at 626 of 163 Ind. App., stated:

"Through recognition of these shortcomings of the strict exclusionary approach, the majority of state courts have now adopted the philosophy that provided all other admissibility requirements are met, an opinion upon an ultimate fact may be given. See general discussion and cases cited

in 32 C.J.S. Evidence § 446, and McCormick, Evidence § 12 (2d Ed. 1972). Exemplifying the new approaches to this problem is Rule 704 of the Rules of Evidence for United States Courts and Magistrates:

" 'Rule 704.

" 'Opinion on Ultimate Issue

" 'Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.'

"Thus the *per se* exclusion rule has been abrogated, and the trial judge at his discretion, may in an appropriate case, permit such evidence. In exercising his discretion, the trial judge should consider the nature of the issue and the offered opinion in light of all attendant circumstances of the particular case. This court will review such an exercise in judicial discretion only for an abuse thereof." (Footnote omitted.) Similarly, *see Bragdon* v. *Bruce* (1950), 120 Ind. App. 497, 501, 92 N.E.2d 646, 648.

In the case at bar, the facts observed by the several witnesses to the collision were fully revealed to the jury, as were the facts observed by Blacketor. A factual basis was thus established for the opinion expressed by Blacketor as to the circumstances surrounding the accident. Such opinion thus served only to inform the jury of Blacketor's perception of the totality of the circumstances surrounding the collision. Furthermore, it is unlikely that such opinion was misused or accorded undue weight by the jury in light of the trial court's instruction to the jury to consider the interest of any witness in the litigation in weighing his testimony. This court cannot say that the trial court abused its discretion in allowing such opinion in evidence, or that the appellants have shown that they were prejudiced thereby.

The next issue presented by this appeal is whether the trial court erred in instructing the jury that Dawn was under a statutory duty to stop her bicycle before proceeding from the alley upon which she was traveling into the street where

the collision occurred. The Enyarts assert that Dawn was not under such a duty, due to the absence of a "Stop" or "Yield" sign at the entrance to the street. However, even assuming, without deciding, that the statute upon which this instruction was based was not applicable to the accident scene, Dawn was under a duty to stop before emerging from the alley under the provisions of IC 1971, 9-4-1-111 (Burns Code Ed.), and IC 1971, 9-4-1-94 (Burns Code Ed.).

As Dawn left the alley, she proceeded across a ██ sidewalk and into the street. Such conduct violates the provisions of the following statutes:

IC 1971, 9-4-1-111, *supra.*

"Stop before emerging from alley or private driveway.— The driver of a vehicle within a business or residence district emerging from an alley, driveway, or building shall stop such vehicle immediately prior to driving onto a sidewalk or into the sidewalk area extending across any alleyway or private driveway."

IC 1971, 9-4-1-94, *supra.*

"Traffic laws apply to persons riding bicycles.—Every person riding a bicycle upon a roadway shall be subject to the provisions of this act [9-4-1-1—9-4-1-138] applicable to the driver of a vehicle, except as to special regulations of this article [9-4-1-93—9-4-1-101], and except as to those provisions of this act which by their nature can have no application."

These statutes are unquestionably applicable to the factual situation presented by the case at bar, and place exactly the same legal duty upon the operator of a bicycle as did the questionably applicable statutes relied upon by the trial court. In these circumstances, appellants could not have been prejudiced by the giving of this instruction inasmuch as it properly described to the jury a legal duty of the plaintiff. Because the jury was not misled and there has been no discernible prejudice to appellants, any error occasioned by the giving of this instruction was harmless, and the result reached was

consistent with substantial justice. The trial court must be affirmed as to this issue. Ind. Rules of Procedure, Appellate Rule 15(D) ; Ind. Rules of Procedure, Rule 61.

The final issue presented by this appeal is whether the trial court erred in failing to include a statement of the standard of care applicable to children as a part of an instruction pertaining to contributory negligence. However, the record discloses that such standard of care was correctly related to the jury in a subsequent instruction dealing with the same issue. Any incompleteness of such a non-mandatory instruction may be cured by another instruction not inconsistent therewith. *Coffey* v. *Wininger* (1973), 156 Ind. App. 233, 296 N.E.2d 154 (transfer denied). In the case at bar, any deficiency in the instruction questioned by appellant was cured by the subsequent instruction.

No reversible error having been shown, the judgment of the trial court must be affirmed.

Affirmed.

Garrard, J., concurs with opinion; Staton, P.J., dissents with opinion.

### CONCURRING OPINION

GARRARD, J.—I concur with Judge Hoffman but believe a word of further explanation may be necessary regarding our review of the exclusion from evidence of any reference to a sign posted near the scene of the collision indicating a speed limit of 20 m.p.h.

The sign was not established to have been erected pursuant to a valid ordinance of the City of Rochester. Thus, exceeding the limit expressed on the sign would not constitute negligence through the violation of a speed statute or ordinance. *Devine* v. *Grace Const. & Supply Co.* (1962), 243 Ind. 98, 181 N.E.2d 862.

On the other hand, as Judge Staton points out, negligence is normally to be determined by the actions of a reasonably

prudent person acting under the same or similar circumstances. Furthermore, I agree that some warning is implicit in a sign advising motorists of a low speed limit. Why then should the existence and location of the sign not be admitted in evidence as simply one of the factual circumstances relevant to the ultimate determination of whether Blacketor exercised reasonable care?

The answer lies in the sound discretion with which a trial court is vested in determining the admissibility of marginally relevant evidence where the risk of prejudice, confusing the issues, or misleading the jury outweighs the probative value of the evidence. *See,* McCormick on Evidence (Second Ed.) § 185; Rule 403, F.R. Ev.; *cf., Spears* v. *Aylor* (1974), 162 Ind. App. 340, 319 N.E.2d 639.

A great number of the cases dealing with traffic control devices erected without proper authority involve either stop signs regular in appearance or traffic control lights. *See, Geisking* v. *Sheimo,* and other citations in the principal opinion. Not only has a driver's disregard of such signals been admissible, it is often referred to by the courts as "controlling." The reason is apparent. A reasonable man exercising ordinary prudence does not deliberately run through a stop sign in the face of opposing traffic even if he carries certified proof that no statute or ordinance was enacted to authorize the sign in question.

Furthermore, signs posted which are actually seen, or in the exercise of reasonable care should have been seen, warning of such things as road construction, children at play, etc. would be *relevant* in determining whether a particular driver exercised reasonable care. However, such signs would not be determinative of the issue. They would merely constitute one additional fact or circumstance to be considered in assessing reasonable care.

Thus, in the case before us, a posted sign advising of a 20 m.p.h. speed limit would imply there was some reason for

traveling below the statutory limit. As such, it would have some probative value, but only on the broad question of whether Blacketor was driving "at a speed greater than was reasonable or prudent under the conditions and having regard to the actual and potential hazards then existing," i.e., exercising reasonable care. *See,* IC 1971 9-4-1-57.

When stated in this fashion, the opportunity of prejudicing Blacketor and misleading the jury is apparent. How does one consider the implied warning of some unspecified hazard implicit in the sign's presence, yet exclude from consideration the 20 m.p.h. dictate which has no legal significance? At best, attempting to cope with this problem would unduly emphasize the importance of the sign and would tend to confuse the jury as to the real issue of whether Blacketor's speed was excessive under the circumstances. In view of these problems, the court did not abuse its discretion in excluding the evidence.

### DISSENTING OPINION

STATON, P.J.—I dissent. The purpose of the motion in limine has been exceeded by the trial court's order which granted Blacketor's motion in limine.[1] A fair trial has been denied. A motion in limine should be granted to exclude prejudicial matter which has no bearing on the issues or the rights of the parties. *Burrus* v. *Silhavy* (1973), 155 Ind.

---

1. The court granted defendant's "Motion for Protective Order" by its order entered June 11, 1973, that:

"It is now ordered and adjudged that the defendant's motion be granted and the plaintiffs are now directed to offer no evidence in the trial of this cause as to whether or not signs were in place on or adjacent to 46th Street in the City of Rochester, Indiana, between Indiana and Ohio Streets, or in proximity thereto on July 11, 1968, or whether after said date such signs were removed, which said signs designated 4th Street at said location as an area where the maximum permissive speed was 20 miles per hour for vehicular traffic on said 4th Street, without first proving on July 11, 1968, a valid ordinance of the City of Rochester, Indiana, was in effect, which ordinance was based upon an engineer and traffic investigation and which ordinance reduced the prima facie speed limit permitted by statute from a miximum [*sic*] of 30 miles per hour to a maximum of 20 miles per hour at said location."

App. 558, 293 N.E.2d 794.[2] A twenty-mile an hour speed limit sign near the scene of a collision between a motorist and a twelve year old girl on a bicycle bears on the issue of Blacketor's negligence when he exceeded the posted speed. *See Mazon v. Druxman* (1966), 68 Wash. 2d 701, 415 P.2d 86. Evidence regarding the presence of the speed limit sign should not have been excluded by a motion in limine. Legal placement of the sign at the scene and negligence *per se* is a different matter which may be properly reached by a motion in limine.[3] The

2. ". . . Its purpose has been succinctly expressed in Bridges v. City of Richardson (1962), 163 Tex. 292, 354 S.W.2d 366, 367:

'The purpose in filing a motion in limine to suppress evidence or to instruct opposing counsel not to offer it is to prevent the asking of prejudicial questions and the making of prejudicial statements in the presence of the jury with respect to matters which have no proper bearing on the issues in the case or on the rights of the parties to the suit. It is the prejudicial effect of the questions asked or statements made in connection with the offer of the evidence, not the prejudicial effect of the evidence itself, which the motion in limine is intended to reach. . . .'

"Its effect has been to shorten the trial, simplify the issues and reduce the possibilities of a mistrial." 293 N.E.2d at 796-97 (footnote omitted).

3. The trial court's order and the majority's rationale take the position that signs erected without statutory compliance have no legal effect whatever, and no one is required to pay any attention to such signs. *But see Cook* v. *Hunter* (1935), 52 Ohio App. 354, 357, 3 N.E.2d 680, 682. In *Hoover* v. *Blackmore* (1949), 87 N.E.2d 477, 480 (Mun. Ct. of Dayton, Ohio 1949), the Court stated:

"Unauthorized 'courtesy' traffic controls, if clearly visible, require operators of vehicles to take such factor into consideration in exercising ordinary care under the circumstances. Mere failure to stop is not, and cannot be, negligence 'per se', however, if the sign is visible from an approaching vehicle, that fact may be considered by the judge or jury just as in any other case involving the exercise of ordinary care."

In *Geisking* v. *Sheimo* (1960), 252 Iowa 37, 41, 105 N.W.2d 599, 601, the Court stated:

"But the great weight of authority is that even an unauthorized sign is not meaningless when questions of negligence are under consideration. We agree with the rule stated in 164 A.L.R., at page 216, under the heading 'Anno—Traffic Control at Street Intersection'. It is there said:

'Furthermore, many courts take the view that even if it is shown that the traffic signal involved was not property authorized, it is still effective to control the question of the negligence or contributory negligence of a pedestrian or vehicle driver who disregards it, at least to the extent that such disregard may be taken into consideration by the trier of the facts as one of the circumstances to

trial court's judgment should be reversed and a new trial granted.

The majority's rationale that a traffic sign must warn of a specific hazard to qualify as a warning to motorists is not supported by reason or authority. A speed limit sign which reduces a previously authorized speed is a warning to a motorist that to exceed the posted speed is a hazard. The hazard need not be specific. A hazardous condition is implicit—congested traffic condition, heavy pedestrial traffic, business district, dangerous intersections or numerous intersection, a residential area, a recreational park is near, a playground, a hospital with emergency traffic is near, a school area is ahead, a construction area with heavy oversized trucks is ahead, condition of the road is unsafe at greater speeds, and many more. A speed limit sign which reduces a previously authorized speed warns the motorist that he must reduce his speed so that he will have sufficient reaction time to avoid a variety of hazards. A separate sign listing each possible hazard at a greater speed is both unnecessary and unreasonable. Whether a sign is a yellow caution light, a

---

be passed upon in determining the question of a violator's negligence or contributory negligence.'

"Numerous authorities are cited in support."

In *Mazon* v. *Druxman* (1966), 68 Wash.2d 701, 415 P.2d 86, the trial court had instructed the jury that the maximum lawful speed limit at the scene of the accident was 15 m.p.h., even though there was no evidence that the speed limit had been reduced from 25 m.p.h. by proper municipal action. Defendant admitted that he knew of the presence of the 15 m.p.h. sign. The Washington Supreme Court approved the instruction and noted:

"In fact, many courts take the view that even if it is shown that the traffic signal was not properly authorized, it is still effective to control the question of the negligence or contributory negligence of a vehicle driver who disregards it." 415 P.2d at 88, *citing* Annot., 3 A.L.R.3d 180, 290 (1965).

The court further noted:

"Travelers upon public highways are not expected to first ascertain and determine whether such signs are established in strict compliance with law before respecting them." 415 P.2d at 88, *quoting from Comfort* v. *Penner* (1932), 166 Wash. 177, 6 P.2d 604.

*See also, e.g., King* v. *Gold* (1937), 224 Iowa 890, 276 N.W. 774; *Mathias* v. *Eichelberger* (1935), 182 Wash. 185, 45 P.2d 619; *Warner* v. *Ambrose* (1958), 53 Wash.2d 231, 332 P.2d 941.

fixed slow sign or a reduce speed sign, all implicitly warn the motorist of a hazardous condition which may require some alteration in the operation of his vehicle. Even the "yield" sign in *Geisking* v. *Sheimo* (1960), 252 Iowa 37, 105 N.W.2d 599, 2 A.L.R.3d 268, did not warn of a specific hazard. Indeed, there may not be any hazard of converging traffic at all. The "yield" sign is merely a warning to slow down and be on the lookout for traffic which may be traveling across the road. It does not specify the number of intersecting roads, the type or density of traffic. To require a warning of a specific hazard is not only unreasonable but unsupported by the weight of authority.

Blacketor's negligence was an issue in this cause. The speed limit sign which reduced the previously authorized speed bears on the issue of Blacketor's negligence when he exceeded that speed and struck twelve year old Dawn Enyart who was riding a bicycle. The evidence that a speed limit sign was at the scene should not have been excluded by the trial court. Its exclusion by a motion in limine denied a fair trial of all the issues to Dawn Enyart. The judgment of the trial court should be reversed, and this cause should be remanded for a new trial.

NOTE.—Reported at 342 N.E.2d 654.